857 F.2d 699
 Gerald GRIMES, Insurance Commissioner of the State of
Oklahoma, Receiver for the United Equity Life
Insurance Company; and Oklahoma Life
and Health Guaranty
Association,
Plaintiffs-
Appellants,
v.
CROWN LIFE INSURANCE COMPANY, Defendant-Appellee.
Reinsurance Association of America and American Counsel of
Life Insurance (ACLI), Amici Curiae.
 No. 86-1905.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 16, 1988.
Rehearing Denied Oct. 14, 1988.
 
 Bert E. Marshall, Gen. Counsel, Oklahoma Ins. Dept., Oklahoma City, Okl., for Gerald Grimes, plaintiff-appellant.
 Don J. Gutteridge, Jr. (Horace G. Rhodes and James W. Rhodes with him, on the briefs), Kerr, Irvine & Rhodes, Oklahoma City, Okl., for Oklahoma Life and Health Guar. Ass'n, plaintiff-appellant.
 Burck Bailey, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl. (C. Wayne Litchfield, Litchfield & Wheeler, Oklahoma City, Okl., with him, on the brief), for Crown Life Ins. Co., defendant-appellee.
 Daniel J. Conway, counsel for Reinsurance Ass'n of America, Washington, D.C., Jack H. Blaine, Washington, D.C., and Phillip E. Stano, counsel for American Council of Life Ins., on the brief, for amici curiae.
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 This dispute arises out of efforts by the Oklahoma Insurance Commissioner as liquidator of the United Equity Life Insurance Company ("UELIC") to realize on a "Coinsurance Indemnity Reinsurance Agreement" (the "Agreement") entered into between UELIC and Crown Life Insurance Company ("Crown"). Gerald Grimes, the Oklahoma Insurance Commissioner, determined before UELIC was placed in liquidation that the Agreement between UELIC and Crown was sufficient under state law to allow UELIC to transfer some of its insurance liability to Crown and thus continue to write insurance for policyholders. After UELIC was put into liquidation, however, a dispute about the validity and extent of the coverage of the policy arose. This appeal centers on the interpretation of certain provisions contained in the Agreement; the effect of the interpretation of the Agreement by the Oklahoma Commissioner of Insurance; and, finally, a determination as to the proper forum in which to decide these questions.
 
 I.
 
 2
 The resolution of these issues depends on the following facts. On April 24, 1984, UELIC was placed in receivership pursuant to Oklahoma state law by the District Court of Oklahoma County. Grimes was appointed as UELIC's receiver. He was charged by the court with ascertaining "UELIC's assets and liabilities." R. Vol. I Tab 13 Exh. A at 2. Two days thereafter, the state district court entered an order staying "the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments, or other liens, or the making of any levy against the receivership estate or against the assets or any part thereof." Id. at Exh. B.
 
 
 3
 Thereafter, Crown informed Grimes that it was rescinding the reinsurance Agreement it had entered with UELIC and that Crown considered the Agreement void from the beginning because of UELIC's misrepresentation of its financial position. Grimes, who had previously decided that this Agreement was sufficient under state law to protect UELIC's policyholders and thus allowed UELIC to transfer some of its liabilities to Crown, subsequently applied to the receivership court for permission to file a declaratory judgment action against Crown to determine the legal obligations of the parties under their Agreement.[1] The Oklahoma court found that the interpretation of the contract was disputed and that "the performance by Crown under said Agreement will materially effect (sic) the ability of the Receiver to pay claims to insureds of United Equity," id. at Exh. C, and granted permission for Grimes to bring this action which he brought in the same state court in which the receivership was pending. However, Crown successfully petitioned for removal of the declaratory judgment action from state to federal court. The federal district court declined to remand on Grimes' assertion that it was without jurisdiction to hear this case.
 
 
 4
 The issues which were before the federal court prior to trial were, (1) whether the contract was void because it was induced by fraud; (2) whether the contract was ambiguous; (3) whether the Agreement called for Crown to bear the risk of UELIC's insolvency; (4) whether the Agreement required Crown to reimburse UELIC based on claims which it had incurred or only on claims which UELIC had paid; and, (5) whether Crown was entitled to offset premiums owed it by UELIC against any amount which it was required under the Agreement to pay. The district court, without addressing the issue of revocation or misrepresentation decided all other issues in favor of Crown. R. Vol. I Tab 86.
 
 
 5
 Grimes appeals this decision arguing that the federal district court did not have jurisdiction to hear this dispute, or, alternatively, that if the court did have jurisdiction, it should have abstained from its exercise. Grimes raises other challenges to the district court's decision, but because we determine that in this case the federal district court should have abstained, we do not address the merits of these claims.
 
 II.
 
 6
 Grimes first asserts, based primarily on a theory of in rem jurisdiction, that the federal district court did not have jurisdiction to hear this suit. He argues that the state district court has already taken jurisdiction over the assets of UELIC, and that one of these assets is the reinsurance contract with Crown. Accordingly, since the state court had jurisdiction over all of the assets first, Grimes argues that the federal court had no jurisdiction to determine UELIC's rights in the insurance contract. See Blackhawk Heating & Plumbing Co., Inc. v. Geeslin, 530 F.2d 154 (7th Cir.1976); Professional Const. Consultants, Inc. v. Grimes, 552 F.Supp. 539 (W.D.Okla.1982). On the other hand, Crown argues that this suit is one in which Grimes as receiver for UELIC, brings a plenary in personam action against Crown to obtain a judicial determination of Crown's obligations under the contract. Central States S.E. and S.W. Areas Health and Welfare Fund v. Old Sec. Life Ins. Co., 600 F.2d 671, (7th Cir.1979); Barrett v. International Underwriters Inc., 346 F.2d 345, 348-49 (7th Cir.1965). As such, Crown argues, it is well within the jurisdictional prerogatives of the federal court.
 
 
 7
 We are persuaded by Crown's argument because the Oklahoma County District Court specifically authorized a separate judicial action to determine the different parties' rights under the reinsurance agreement. Once the state court has authorized such an independent proceeding, the larger context in which it occurs does not present a bar to federal jurisdiction where the case is properly removed to a federal court. See Levy v. Lewis, 635 F.2d 960, 964-66 (2d Cir.1980) (" 'Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies....' ") (quoting Motlow v. Southern Holding & Sec. Corp., 95 F.2d 721, 725-26 (8th Cir.), cert. denied, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938) (emphasis added). In such a context the ruling by the federal courts as to the rights of the parties in the contract will not "interfere with the constructive possession" of that asset by the Oklahoma County District Court, nor does it create any danger of inconsistent adjudications because the action is only before the federal court. Accordingly, we find that the Oklahoma County District Court's jurisdiction over all the assets in UELIC's estate, does not jurisdictionally bar the federal court from determining the value of one of those assets in this context.[2] See Law Enforcement Ins. Co., Ltd. v. Corcoran, 807 F.2d 38, 41-42 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987); Levy, 635 F.2d at 964-66; Metropolitan Life Ins. Co. v. Board of Directors of Wis. Ins. Sec. Fund, 572 F.Supp. 460, 470 (W.D.Wis.1983); In Re All-Star Ins. Corp., 484 F.Supp. 623, 624-25 (E.D.Wis.1980).
 
 
 8
 Grimes' second jurisdictional argument also fails on the same ground. Grimes argues that the Oklahoma statutory scheme for conducting insurance liquidation gives the Oklahoma County District Court jurisdiction over all claims "both for and against an insurance company in liquidation." Professional Const. Consultants, 552 F.Supp. at 541 (quoting Knickerbocker Agency v. Holz, 4 N.Y.2d 245, 250, 149 N.E.2d 885, 889, 173 N.Y.S.2d 602, 607 (1958)). According to Grimes, such a state scheme in conjunction with the McCarran-Ferguson Act[3] which expresses the congressional policy of leaving insurance regulation to the states, gives Oklahoma courts exclusive original jurisdiction over this declaratory judgment action against Crown.
 
 
 9
 Nonetheless, even if Grimes' argument is correct, he did not seek to obtain a determination of Crown's liability as a part of the liquidation action. He instead obtained permission to file a separate declaratory judgment action which he brought before a different judge in the same court. Once the liquidation court approved the separate pursuit of a declaratory judgment action, it had, in effect, called upon another court for assistance. Thus, when this action was properly removed, it was within the jurisdiction of the federal court.
 
 
 10
 As a further matter, we are hesitant to accept the proposition that a state statute, even when buttressed by the federal policy expressed in the McCarran-Ferguson Act, can affect the invocation of federal diversity jurisdiction. See Atlantic & Pac. Ins. Co. v. Combined Ins. Co. of Am., 312 F.2d 513, 515 (10th Cir.1962) ("The McCarran Act serves to limit the authority of federal regulatory agencies as to practices in the insurance business in the face of state acts and in the absence of specific federal law ... but it does not follow that there is thereby a modification of diversity jurisdiction of the federal courts."); cf. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 807-09, 96 S.Ct. 1236, 1241-42, 47 L.Ed.2d 483 (1976) (act does not modify diversity jurisdiction in the absence of an affirmative showing of an intent to repeal). Thus, the policy of the McCarran-Ferguson Act was to leave the regulation of insurers to the states, it did not intend to divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate diversity proceedings. We accordingly reject Grimes' argument that the federal district court had no jurisdiction to hear this case.
 
 III.
 
 11
 On appeal, however, Grimes raises the argument that even if it had jurisdiction, the federal court should have abstained from exercising it. Crown, on the other hand, asserts that to abstain in this instance would constitute an abdication of federal judicial responsibility, and that because Grimes failed to raise this issue at the trial below, the argument has been waived.
 
 It is recognized by all courts that:
 
 12
 "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' "
 
 
 13
 Moses H. Cone Hosp. v. Mercury Const. Corp., 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244).
 
 
 14
 Although there are several situations in which this narrow exception to the exercise of jurisdiction is recognized as appropriate by the Supreme Court, the type most applicable in this situation is the abstention recognized in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (Supreme Court held the exercise of federal jurisdiction improper to review decisions made by a Texas commission to regulate and conserve the pumping of oil and gas in Texas). In Burford, the Supreme Court held that federal courts should exercise their discretionary power to refuse to hear cases within their jurisdiction when to do so would impair the "independence of state governments in carrying out their domestic policy." Id. at 318, 63 S.Ct. at 1099 (quoting Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841 (1935). In a later abstention case involving a different kind of abstention, the Supreme Court characterized Burford abstention as appropriate where:
 
 
 15
 "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.... In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 16
 Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244-45 (emphasis added).
 
 
 17
 The McCarran-Ferguson Act thus becomes relevant to this case, not because it removes diversity jurisdiction from the federal courts in insurance matters, but because it encourages the states to formulate their own systems to regulate insurers doing business in their states. Therefore, in instances where states have responded to this congressional policy by formulating complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers, it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove to be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id.
 
 
 18
 Thus, given the traditional federal deference provided to state receivership proceedings, see Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935); Duggins v. Hunt, 323 F.2d 746 (10th Cir.1963); Inland Empire Ins. Co. v. Freed, 239 F.2d 289, 293 (10th Cir.1956),[4] coupled with complex and comprehensive procedures adopted for the liquidation of insolvent insurers pursuant to the provisions of the McCarran-Ferguson Act, most federal courts have declined to exercise jurisdiction in disputes like this one which present themselves in the larger context of state liquidation proceedings. See Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31 (2d Cir.1988) (upheld remand of action brought by New York Superintendent of Insurance against reinsurers to state court); Law Enforcement Insurance Co., Ltd. v. Corcoran, 807 F.2d 38, 42-44 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). (Even though federal court could make "a declaration of rights to property being administered by another [court]" without "any unseemly interference on the part of the federal courts in state court proceedings," such a determination should not be "wrenched from the context in which the state court acted, the context of a unified administrative/judicial proceeding."); Levy v. Lewis, 635 F.2d 960 (2d Cir.1980) (dismissal of federal court suit appropriate in context of state insurance liquidation proceedings); Cummings Wholesale Elec. Co., Inc. v. Home Owners Ins. Co., 492 F.2d 268 (7th Cir.), cert. denied, 419 U.S. 883, 95 S.Ct. 149, 42 L.Ed.2d 123 (1974) (same); Aims Enterprises, Inc. v. Muir, 609 F.Supp. 257, 260-63 (M.D.Pa.1985) (same); Metropolitan Life v. Board of Directors of Wis. Ins. Sec. Fund, 572 F.Supp. 460, 472-73 (W.D.Wis.1983) (same); In Re Matter Of All-Star Ins. Corp., 484 F.Supp. 623, 624-26 (E.D.Wis.1980) (Despite the existence of jurisdiction, district court remanded suit seeking a declaration of rights in asset of insurance company in liquidation.); Mathias v. Lennon, 474 F.Supp. 949 (S.D.N.Y.1979) (dismissal of federal action in deference to a state liquidation proceeding); Meicler v. Aetna Casualty & Sur. Co., 372 F.Supp. 509 (S.D.Tex.1974), aff'd, 506 F.2d 732 (5th Cir.1975) (same).
 
 
 19
 Of course, even when states formulate comprehensive schemes for insurance regulation and liquidation, federal courts may properly exercise their jurisdiction in some cases. A number of factors are relevant to a determination of whether the exercise of jurisdiction is proper. These factors include: (1) whether the suit is based on a cause of action which is exclusively federal, see Central States S.E. And S.W. Areas Health and Welfare Fund v. Old Sec. Life Ins. Co., 600 F.2d 671, 677 (7th Cir.1979) (State act granting exclusive original jurisdiction over insurance liquidation to state courts "cannot be interpreted as precluding a party from pursuing a congressionally created federal claim in the only courts able to provide affirmative relief on that claim."); (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry, see Colorado River, 424 U.S. at 815, 96 S.Ct. at 1245 ("While state claims are involved in the case, the state law to be applied appears to be settled."); United Services Auto. Ass'n v. Muir, 792 F.2d 356, 364-65 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987) (state law at issue did not relate to insurance regulation, nor the transferring or spreading of the policyholder's risk, and it required neither a consideration of any other Pennsylvania statute nor a complicated regulatory scheme); (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues, see Burford, 319 U.S. at 325-37, 63 S.Ct. at 1103-04; Brandenburg v. First Maryland Sav. and Loan Inc., 660 F.Supp. 717, 728-29 (D.Md.1987); Riley v. Heil Co., 624 F.Supp. 695, 698 (S.D.Ohio 1985); and, (4) whether difficult or unusual state laws are at issue, see Colorado River, 424 U.S. at 815, 96 S.Ct. at 1245; Board of Educ. of Valley View v. Bosworth, 713 F.2d 1316, 1320 (7th Cir.1983); Naylor v. Case and McGrath, Inc., 585 F.2d 557, 565 (2d Cir.1978).
 
 
 20
 In the instant case the state of Oklahoma has formulated a complex and comprehensive scheme of insurance regulation which contains the Uniform Insurers Liquidation Act for the liquidation of an insolvent insurer. The provisions of the Act specify not only that the venue of any delinquency proceedings shall be in Oklahoma County District Court, but they grant to that court "exclusive original jurisdiction of delinquency proceedings pursuant to the provisions of this article." Okla.Stat. tit. 36 Sec. 1902(A). Thus, Oklahoma has not only adopted a comprehensive scheme to oversee the liquidation of insolvent insurers, it has provided a particular court--the Oklahoma County District Court--to oversee liquidation proceedings. The effect of this provision grants the Oklahoma County District Court a special relationship of cooperation, technical oversight and concentrated review with the Oklahoma Commissioner of Insurance in the process of liquidating insurers. See Burford, 319 U.S. at 326-27, 63 S.Ct. at 1103-04. The statutory scheme also provides for review of that court's decisions by the Oklahoma Supreme Court. Okla.Stat. tit. 36 Sec. 1902(D).
 
 
 21
 Neither party raises any question of uniquely federal jurisdiction here. The questions at issue in this case are questions of state law which affect the fundamental purposes of a state liquidation proceeding. The fundamental dispute in this case is whether the reinsurance contract complies with the requirements of Okla.Stat. tit. 36 Sec. 711(C) which would require Crown to bear the risk of UELIC's insolvency.[5] Oklahoma allows insurers to transfer their liabilities to other insurers through reinsurance contracts if they comply with this section; this allows the transferring or ceding insurer to increase the amount of insurance policies which it can write. Section 711(C) states that:
 
 
 22
 In addition to other restrictions provided for in this subsection, no credit shall be allowed, as an asset or as a deduction from liability, to any ceding insurer for reinsurance nor increase the amount it is authorized to have at risk unless the reinsurance is payable by the assuming insurer on the basis of the liability of the ceding insurer under the contracts reinsured without diminution because of the insolvency of the ceding insurer.
 
 
 23
 This statutory plan, as we read it, and as it was read by the district court, requires the Commissioner of Insurance to determine in any particular instance, whether a reinsurance agreement qualifies to permit an insurer to transfer its liabilities to a reinsurer and thus continue to write insurance.
 
 
 24
 In this case, Grimes asserts that he determined that the contract between UELIC and Crown qualified and he thus allowed UELIC to take the credit, remain in business, and write more insurance contracts. Such a determination by the Commissioner's office has major ramifications for the policyholders of insurers which eventually end up in insolvency proceedings. What effect the Commissioner's previous determination has on his ability to collect from Crown, or on a subsequent judicial construction of the contract is unclear, but it is a fundamental and important question of state law and policy[6] which the Oklahoma County District Court should be allowed to answer in the first instance. In a similar case the Second Circuit held that:the Superintendent's power to collect on reinsurance agreements entered into by a liquidated company is a matter of no little concern, for policy holders have no direct right of action against reinsurers; only the Superintendent, as liquidator, can recover from the reinsurer.... The extent to which the Superintendent is able to collect thus affects the degree to which the insolvent insurer's estate will have assets sufficient to satisfy the claims of its creditors. It is clear that these questions are important to the state regulatory scheme and that the scope of the Superintendent's power, insofar as it is pertinent to this case, has not yet been resolved by the state's courts. Accordingly, the district court's decision to abstain appears to fit particularly well within the Burford goal of avoiding interference with specialized state regulatory schemes.
 
 
 25
 Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31, 37 (2d Cir.1988) emphasis added).[7] See also Law Enforcement Ins. Co., Ltd. v. Corcoran, 807 F.2d 38, 42-44 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987).
 
 
 26
 The interpretation of Sec. 711(C) and the effect of the commissioner's interpretation of the reinsurance contract, however, are not the only important matters of state law relevant to the liquidation of insolvent insurers. At trial, Crown argued that the declaratory judgment action nonetheless required application of Okla.Stat. tit. 36 Sec. 1928 which defines a reinsurer's right of offset in a liquidation proceeding. Although the federal district court did not find the statute applicable since the declaratory judgment action was technically not a liquidation proceeding, it did analogize to it in determining that Crown was entitled to the offset right which it requested. On appeal, Grimes challenges the district court's determination of Crown's offset right based on its interpretation of the statute. Again, whether or not the statute is applicable and what its provisions require are matters which are inseparably related to a state liquidation proceeding, and, as such, should not be decided in a federal court especially when a state has attempted to create courts of special competence to decide such issues.
 
 
 27
 Allowing the district court to exercise jurisdiction in this case would disrupt the ability of the state officers of Oklahoma in conjunction with the Oklahoma County District Court to devise and efficiently operate a complex system of administrative and judicial interrelationships which makes up the statutory scheme for liquidating insolvent insurers in Oklahoma. Accordingly we hold that the district court should have abstained in this case.
 
 
 28
 Crown asserts that even if abstention would have been appropriate in the first instance, Grimes has waived his right to assert this argument on appeal, because he did not raise it in the district court.[8] However, where abstention is at issue, the failure to raise it at the district court level does not necessarily waive the appellant's right to raise it on appeal. See Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983) ("[T]he court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it."); Naylor v. Case & McGrath Inc., 585 F.2d 557, 563 (2d Cir.1978) (Abstention may be raised by the court sua sponte."); AFA Distributing Co. v. Pearl Brewing Co., 470 F.2d 1210, 1213 (4th Cir.1973) ("Although the failure of the parties to raise the abstention issue either at trial or on appeal is entitled to some consideration, the public policy underlying the application of the abstention doctrine is so strong that we notice its application ex mero motu."); Urbano v. Board of Managers of New Jersey State Prison, 415 F.2d 247, 254 n. 20 (3d Cir.1969), cert. denied, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970); ("We do not believe that appellee's failure to assert the abstention principle below bars our resort to the abstention doctrine on appeal under the circumstances here."); see also 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4245 at 101 (1988).
 
 
 29
 We have previously declined, at least in part, to direct abstention based on Colorado River grounds when the abstention issue was not raised in the trial court. See New Mexico v. Molybdenum Corp. of Am., 570 F.2d 1364, 1367 (10th Cir.1978).[9] But, while Burford abstention is concerned with preventing the disruption "of state efforts to establish a coherent policy with respect to a matter of substantial public concern," Colorado River abstention is based on the policy of conserving judicial resources in situations involving the contemporaneous exercise of concurrent jurisdictions. Thus, under Colorado River, once a federal court has tried the case on its merits, it would be rare that judicial resources would be conserved by abstaining on appeal. The policy underlying Burford, however, is not affected by a determination on the merits of a federal district court.[10]
 
 
 30
 Accordingly, where Burford abstention is appropriate, it can be ordered on appeal. Therefore, the decision of the district court in this case is REVERSED and REMANDED with directions to the district court to REMAND[11] this case to the District Court of Oklahoma County.
 
 
 
 [1]
 Grimes was joined in this motion, the subsequent declaratory judgment action, and this appeal by the Oklahoma Life and Health Guaranty Association
 
 
 [2]
 As Levy also indicates, federal courts are beginning to view the in rem--in personam distinction as one which does not prevent jurisdiction but invites abstention
 The Court was referring to the accepted principle that once a court has jurisdiction over a particular res, no other court can proceed in rem with respect to the same res. The principle is often stated as a matter of jurisdiction: that a second court cannot have jurisdiction to proceed in rem if jurisdiction over the res is maintained by another court. Nevertheless, as the Court appeared to recognize, the principle involved is more accurately described as a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court for the sake of comprehensive disposition of rights in a particular piece of property or in a fund.
 Levy, 635 F.2d at 965-66. Although this suit is technically separate from the liquidation proceeding, and thus the pendency of the liquidation proceeding poses no jurisdictional bar, the unique issue in this declaratory judgment action is the calculation of the value of an asset of an insurance company in liquidation, and the action itself was authorized by the liquidation court. Thus, although we have determined that for jurisdictional purposes this suit is in personam, it does have substantial in rem characteristics. Because in contexts such as this there is no practical difference between in personam and in rem jurisdiction, see, e.g., Metropolitan Life Ins. Co. v. Board of Directors of Wis. Ins. Sec. Fund, 572 F.Supp. 460, 471 (W.D.Wis.1983) ("Although plaintiffs' complaint is brought in personam, rather than in rem, ... the consequences of the filing are no different."), we consider the nature and origin of the proceeding in our abstention analysis. See infra section III.
 
 
 [3]
 The McCarran-Ferguson Act provides that:
 [T]he continued regulation and taxation by the several States of the business of insurance is in the public interest....
 (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
 (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance....
 15 U.S.C. Secs. 1011-12.
 
 
 [4]
 Federal courts also hesitate to issue declaratory judgments when an existing state proceeding raises the same issues between the same parties and requires only the application of state law
 " 'Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.' "
 Will v. Calvert Fire Ins. Co., 437 U.S. 655, 663-64, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978) (plurality opinion) (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1175-76, 86 L.Ed. 1620 (1942); see also Duggins v. Hunt, 323 F.2d 746, 748 (10th Cir.1963) ("The Declaratory Judgment Act is not intended to give alternative forums so as to draw federal and state courts into potential conflict."). Although in this case the declaratory judgment action was removed, the same policies merit consideration.
 
 
 [5]
 A determination that the contract complies with Sec. 711(C) would also apparently determine that Crown is obligated to reimburse Grimes not just for claims paid by UELIC but for claims on which it is liable
 
 
 [6]
 The receivership court indicated as much when it authorized the declaratory judgment proceeding by noting that "the performance by Crown under said Agreement will materially effect (sic) the ability of the Receiver to pay claims to insureds of United Equity."
 
 
 [7]
 The New York statutory liquidation procedures are similar to those adopted in Oklahoma. Of course, to the extent that Crown might attempt to distinguish Corcoran by arguing that policyholders could directly sue reinsurers in Oklahoma, the question is itself a matter of state law which is integrally related to the state scheme adopted for the liquidation of delinquent insurers, and, as such, should not be decided by a federal court in these circumstances
 
 
 [8]
 Although this is true, we note the relevance of many of the jurisdictional arguments raised below to the abstention issue. Further, both sides have vigorously argued the abstention issue on appeal
 
 
 [9]
 In Molybdenum Corp., we also found that any sort of abstention was unjustified
 
 
 [10]
 The Colorado River Court itself indicated that the application of that doctrine was considerably narrower than were the other kinds of abstention. Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246
 
 
 [11]
 " '[A]bstention can be exercised through remand, assuring an adjudication of the state law issues in the pending action without risk of delay. That is the indicated course where, as here, the state law is uncertain and its resolution a matter of concern to the state.' " Corcoran, 842 F.2d at 36 (quoting Naylor v. Case & McGrath, Inc., 585 F.2d 557, 565 (2d Cir.1978))