Ernest SABATO, William Paulus, Leonard Bellezza and Harry Olstein, Plaintiffs,

v.

FLORIDA DEPARTMENT OF INSURANCE as Receiver of Southeastern Reinsurance, Inc., and as Receiver of Southeastern Casualty and Indemnity Company, Defendant.

No. 91–6106–CIV.

United States District Court, S.D. Florida.

June 28, 1991.

Kozyak, Tropin, Throckmorton & Humphreys, P.A., Miami, Fla., for plaintiffs.

Armstrong & Mejer, P.A., Coral Gables, Fla., for defendant.

## ORDER DISMISSING ACTION

PAINE, District Judge.

This matter comes before the court upon the Defendant's Motion to Quash Service of Process and to Dismiss Action (the "Motion to Dismiss") (DE 4).

### I. Background

Southeastern Casualty and Indemnity Company ("SCI"), and Southeastern Reinsurance, Incorporated ("SRI"), operated as surety companies in Plantation, Florida. Upon their insolvency, the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, pursuant to the Insurers Rehabilitation and Liquidation Act (the "Act"),[1] issued an Order of Liquidation, Injunction, and Notice of Automatic Stay (the "Order") as to each insurer, thereby (i) appointing Defendant, FLORIDA DEPARTMENT OF INSURANCE (the "DEPARTMENT"), as Receiver of SCI and SRI for purposes of liquidation, and (ii) prohibiting any judicial action against the insurers or their assets.[2]

---

1. Fla.Stat. §§ 631.001–631.399 (1989).

2. The Orders were issued in: *In Re The Receivership of Southeastern Reinsurance Company,* *Inc., a Florida corporation,* in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, Case No. 89–2855; and *In Re The Receivership of Southeastern Casualty & In-*

Through the Act and Orders, the DEPARTMENT was expressly authorized to marshal the insurers' assets.[3] Exercising this authority, the DEPARTMENT sued in the Circuit Court for Leon County to recover loans made by SRI to Southeastern Insurance Group ("SIG"), the parent corporation of both insurers. *See* Plaintiffs' Memorandum in Opposition to Motion to Quash Service of Process and to Dismiss Action (the "Opposition Memorandum") (DE 10) at 2.[4]

The DEPARTMENT then delivered letters alleging that former directors of SCI and SRI, including Plaintiffs, ERNEST SABATO, WILLIAM PAULUS, LEONARD BELLEZZA, and HARRY OLSTEIN, were aware of and participated in improper transfers of approximately ten million dollars to SIG. *See* Opposition Memorandum (DE 10) at 2, Exhibit A.[5] The letters demanded return of the funds and tendered formal notice under the Florida civil theft statute, Fla.Stat. § 772.11 (1989). In response, and despite the pendency of the state court liquidation proceedings, Plaintiffs filed the instant action, seeking a declaration by this Court that the intercompany transfers of funds to SIG were proper and did not constitute civil theft. *See* Complaint (DE 1) at 7. The DEPARTMENT thereafter filed two additional state court actions in accordance with the demand letters.[6]

The DEPARTMENT has filed the Motion to Dismiss, arguing that, because the issues herein are identical to the pending state court actions, this Court should defer ruling under the *Burford, Younger,* and *Colorado River* abstention doctrines. *See*

Memorandum in Support of Motion to Quash Attempted Service of Process and to Dismiss Action (the "Supporting Memorandum") (DE 5) at 4–14. Plaintiffs contend that "[t]his action will not interfere with the state court liquidation proceeding and involves issues distinct from that case; therefore, abstention is inappropriate." Opposition Memorandum (DE 10) at 9. The DEPARTMENT replies that "[t]hese Plaintiffs have ample opportunity to interpose defenses in the pending state-court cases." Reply to Plaintiffs' Memorandum in Opposition to Motion to Quash Service of Process and to Dismiss Action (DE 14) at 2.

## II. Analysis

### a. The Legislative Framework

The Act is drawn from the Uniform Insurers Liquidation Act, 13 U.L.A. 321–53, which has been adopted in at least thirty jurisdictions; *see* 18C Fla.Stat.Ann., ch. 631 (West.Supp.1991); *Springer v. Colburn*, 162 So.2d 513, 514 n. 1 (Fla.1964). Its purpose is to protect the interests of insureds, creditors, and the public generally through "[e]nhanced efficiency and economy of liquidation through clarification and specification of the law to minimize legal uncertainty and litigation." Fla.Stat. § 631.001(4) (1989). The Act "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which in substance and effect enact [the Act]." *Id.* at § 631.001(5).

### b. The Abstention Doctrines

#### i. Burford

■ In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that the district court

---

demnity Company, Inc., a Florida corporation, in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, Case No. 89–2856. *See* DE 5, Exhibits A–B.

3. *See* Fla.Stat. § 631.111(1) (1989); Order (DE 5, Exhibits A–B) at para. 1.

4. This state court action is styled *State of Florida, Department of Insurance, as Receiver of Southeastern Reinsurance Company, Inc., a Florida corporation v. Bellezza, et al.,* in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, Case No. 90–19147.

5. Plaintiffs were directors of SIG as well. *See* Opposition Memorandum (DE 10) at 1.

6. These actions are styled: *State of Florida, Department of Insurance, as Receiver of Southeastern Casualty & Indemnity Insurance Company, Inc., a Florida corporation v. Bellezza, et al.,* in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, Case No. 91–7734; and *State of Florida, Department of Insurance, as Receiver of Southeastern Reinsurance Company, Inc., a Florida corporation v. Bellezza, et al.,* in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, Case No. 91–9319.

acted within its discretion in dismissing an action brought to enjoin enforcement of a Texas Railroad Commission order granting Burford a permit to drill four oil wells. The Court emphasized that Texas' regulatory scheme, designed to use that state's oil fields efficiently and fairly, embodied uniquely state concerns. Under this scheme, the Texas courts were "working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." 319 U.S. at 325, 63 S.Ct. at 1103. Federal participation would only cause confusion; "[a]s a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statutes provide." *Id.* at 327, 63 S.Ct. at 1104.

The *Burford* court stated, as a general principle, that federal courts should exercise their discretionary power to refuse to hear cases that would impair the "independence of state governments in carrying out their domestic policy." *Id.* at 318, 63 S.Ct. at 1099 (quoting *Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935)). *Burford* abstention is thus appropriate "when 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir.1991) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

In this case, Florida has enacted "a complex regulatory scheme, supervised by the state court and central to state interests," for regulating and liquidating domestic insurance companies. *Lac D'Amiante Du Quebec v. American Home Assurance Co.*, 864 F.2d 1033, 1043 (3d Cir.1988) (applying New York codification of Uniform Insurers Liquidation Act). The DEPARTMENT must marshal the insolvent insurers' current assets to satisfy claimants. As in federal bankruptcy proceedings, an effective liquidation requires joinder of *all* assets and claims in a single forum. *Levy v.*

*Lewis*, 635 F.2d 960, 964–67 (2d Cir.1980) (applying New York codification). The Act grants sole venue and exclusive original jurisdiction over liquidation proceedings to the Circuit Court of Leon County. Fla. Stat. § 631.021 (1989). The Circuit Court issues orders of liquidation, enjoins suits against the DEPARTMENT to protect the proceedings, and oversees the DEPARTMENT's assessment of claims by and against the insurer's estate. *See Lac D'Amiante*, 864 F.2d at 1045. Thus, the Circuit Court and the DEPARTMENT are "working partners" within the meaning of *Burford*. *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 705 (10th Cir.1988) (applying Oklahoma codification of Uniform Insurers Liquidation Act).

The Florida statutory scheme was enacted following a federal congressional mandate that regulation of the insurance industry be left to the states. The McCarran-Ferguson Act of 1945 provides, in pertinent part:

> Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest. . . .
>
> (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance. . . .

15 U.S.C. §§ 1011–12. The Uniform Insurers Liquidation Act, as adopted in Florida and elsewhere, therefore "operates pursuant to an express federal policy of noninterference in insurance matters." *Levy*, 635 F.2d at 963.

By bringing this action, Plaintiffs ask this Court to determine their rights respecting claimed assets of insurers during liquidation. In these circumstances, assumption of federal jurisdiction would be

"highly destructive" of Florida's regulatory scheme. *Lac D'Amiante*, 864 F.2d at 1045. The Court will accordingly dismiss the action under the doctrine of *Burford* abstention. *See Nasser v. City of Homewood*, 671 F.2d 432, 439 (11th Cir.1982) (*Burford* requires dismissal, not stay).

### ii. Younger

■ In *Younger v. Harris*, 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971), the Supreme Court held that, for reasons of comity, federal courts should abstain from enjoining ongoing state criminal proceedings, absent a showing of bad faith, harassment, or irreparable harm. The Court has expanded *Younger* in three key respects, which render the principle applicable herein.

First, the *Younger* holding has been extended beyond criminal proceedings to state "civil actions in aid of criminal jurisdiction or involving enforcement-type proceedings in which vital interests of the state *qua* state are involved." *Cate v. Oldham*, 707 F.2d 1176, 1183 (11th Cir. 1983) (collecting Supreme Court precedent). As the Second Circuit Court of Appeals wrote:

> While the Supreme Court has not yet applied *Younger* to state insurance company liquidation proceedings such as are at issue here and while these proceedings are perhaps more remote from the criminal process than other proceedings in which *Younger* has been applied, *Younger*'s concerns with comity and with a state's enforcement of important interests in its own courts seem equally applicable. Here the state is a party to proceedings in its own courts, seeking to carry out regulatory duties left to it by Congress.

*Levy*, 635 F.2d at 965. The presence of a civil theft claim only strengthens this analysis.

■ Second, in a companion case to *Younger*, the Supreme Court held that federal courts should decline to issue not only injunctions, but also declaratory judgments, that interfere with state proceedings. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). "Ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." *Id.* at 72, 91 S.Ct. at 767. Under the Declaratory Judgment Act, in fact, a judicial declaration is enforceable by injunction. *Id.* at 72–73, 91 S.Ct. at 767–68 (citing 28 U.S.C. § 2202). Thus, abstention is no less appropriate simply because Plaintiffs seek a declaration of non-liability, rather than an injunction against completion of the state court actions.

Finally, in *Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975), the Supreme Court held that the state proceedings need not be pending on the day the federal case is filed. "[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." 422 U.S. at 349, 95 S.Ct. at 2292. So long as the state proceedings provide the federal plaintiff a forum to adjudicate his claim, abstention is proper. *Id.* Thus, because Plaintiffs may establish their non-liability in state court, the mere fact that they filed the instant action after receiving the DEPARTMENT's demand letters, but *before* the DEPARTMENT filed suit, is inconsequential.

Due to the pendency of an "enforcement-type proceeding" in state court, the *Younger* abstention doctrine applies to this declaratory action. Thus, independent of *Burford*, dismissal is warranted. *See Hicks*, 422 U.S. at 352, 95 S.Ct. at 2293 (dismissal is proper under *Younger*).

### iii. Colorado River

■ *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), recognized a separate theory of abstention: def-

erence to ongoing parallel state litigation.[7] The Supreme Court therein held that, under limited circumstances,[8] a federal court may stay or dismiss an action "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

■ A district court should consider six factors in determining whether such abstention is appropriate: (1) whether the state and federal courts have assumed jurisdiction over the same *res;* (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the relative progress in the state and federal proceedings; (5) whether federal or state law will apply; and (6) the adequacy of the state court to protect the parties' rights. *American Bankers Ins. Co. of Florida v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir.1990) (citing *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246; *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 23, 26, 103 S.Ct. 927, 941, 942, 74 L.Ed.2d 765 (1983)).

The Court, on balance, finds that the circumstances exist to warrant *Colorado River* abstention. A liquidation proceeding involves the comprehensive disposition of rights in a particular fund, the insurers' estate. The Circuit Court of Leon County has previously assumed jurisdiction over this *res.* Although the instant action may be properly described as *in personam,* there are strong reasons for requiring that all claims concerning the assets of an insolvent insurer be heard in a single forum. *See Levy,* 635 F.2d at 964–67. The Florida legislature, by adopting the Act pursuant to Congress' mandate, and the Circuit Court, by ordering the injunction and stay,

have evinced a strong desire to litigate all claims in one forum. To do otherwise would certainly create piecemeal litigation. Moreover, this federal claim, which has yet to proceed on the merits, involves wholly state law claims that may be raised in the pending state court actions.

■ When abstaining under *Colorado River* and its progeny, the district court should generally stay, rather than dismiss, the federal action pending completion of the parallel state proceeding. *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 242–44 (9th Cir.1989); *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1561–62 (7th Cir.1989). Because both *Burford* and *Younger* apply as well, however, dismissal is proper.

#### c. The Liquidation Cases

■ Under one or more of the abstention doctrines discussed above, "most federal courts have declined to exercise jurisdiction in disputes like this one which present themselves in the larger context of state liquidation proceedings." *Grimes,* 857 F.2d at 704 (citing nine cases). While the federal actions ordinarily involve creditor claims *against* an insolvent insurer, the theory of abstention applies equally to claims *by* the insurer to collect debts or obtain a judicial declaration of liability. *See Grimes,* 857 F.2d at 702–06; *Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 37 (2d Cir.1988) (applying New York codification of Uniform Insurers Liquidation Act); *Matter of All–Star Ins. Corp.*, 484 F.Supp. 623, 626 (E.D.Wisc.1980) (applying Wisconsin codification). In either event, the pending litigation "affects the degree to which the insolvent insurer's estate will have assets sufficient to satisfy the claims of its creditors." *Corcoran,* 842 F.2d at 37. Thus, abstention remains appropriate in

---

7. Although the Supreme Court did not use the word "abstention" in *Colorado River,* lower courts applying the case generally do. *E.g., Harder v. Rafferty,* 709 F.Supp. 1111, 1114–16 (M.D.Fla.1989).

8. *But see Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–63, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504

(1978) (Rehnquist, J., plurality) ("[i]t is equally well settled that a district court is 'under no compulsion to exercise [its] jurisdiction' where the controversy may be settled more expeditiously in state court") (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942)).

this action seeking a declaration of non-liability to the insurer.

### III.   Conclusion

Applying the *Burford, Younger,* and *Colorado River* abstention doctrines, and the principles of comity, federalism, and judicial economy upon which they are based, this Court elects to abstain in deference to the liquidation proceedings and related state court actions.[9]   It is therefore

ORDERED and ADJUDGED as follows:

1.   The Motion (DE 4) is GRANTED.

2.   This action is DISMISSED.

3.   The Clerk of the Court is directed to close this file.

DONE and ORDERED.

---

**9.**   It is therefore unnecessary to reach two additional arguments advanced by the DEPARTMENT: (i) that Plaintiffs' failure to join as co-Plaintiffs the directors of SCI and SRI who live in Florida destroys diversity jurisdiction; and (ii) that, independent of the abstention doctrines, the Court should refuse to grant declaratory relief due to the pending state court actions.   *See* Supporting Memorandum (DE 5) at 14–17.