188 B.R. 1002 (1995)
In re Harold W. WARD, Debtor.
Harold W. WARD, Plaintiff,
v.
STATE OF ALASKA, DEPT. OF REVENUE; and State of Alabama, Dept. of Human Resources, Defendants.
Bankruptcy No. 90-01171. Adv. No. 94-00130.
United States Bankruptcy Court, M.D. Alabama.
April 19, 1995.
*1003 Tim Bice, Sylacauga, Alabama, for plaintiff.
J. Van Wilkins, Talladega, Alabama, for defendants.

OPINION ON COMPLAINT FOR PERMANENT INJUNCTION
RODNEY R. STEELE, Chief Judge.
At Montgomery, Alabama, on Thursday March 23, 1995, the above complaint came for hearing. All parties were offered an opportunity to present testimony and other evidentiary materials and extensive oral argument was heard. After careful consideration of the facts in the instant proceeding as well as the relevant law, the court finds that the debts in question are non-dischargeable and that this court lacks sufficient jurisdiction to determine the amount of the debt.

I. Facts
On March 29, 1990 Harold Wade Ward petitioned for relief from his creditors under Chapter 13 of the United States Bankruptcy Code.[1] The principal debt provided for in this plan was payment of child support arrearage.
Prior to filing this bankruptcy case, Mr. Ward and his former spouse, Vanessa Ward Archulleta, were divorced in accordance with an order of an Alaska state court. In that order, Mr. Ward was directed to make ongoing child support payments. In return for public assistance for herself and the child, Ms. Archulleta assigned her rights to these child support payments to the State of Alaska.
Subsequently, Ward and Archulleta moved to Alabama. In two Talladega Circuit Court actions custody of the minor child was given to Ward and payments of future child support from Ward to Archulleta were terminated. In the 1989 action, the court ordered that Ward owed to Archulleta $2,836.19 which was listed as for "reimbursement." In the 1991 action the amount of arrearage owed to Archulleta was litigated and determined to be $3,000.00. There was no mention of nor modification to arrearage owed to any other party, including the State of Alaska in either order.
The State of Alabama filed a claim for $5,335.73 in Ward's pending Chapter 13 case. *1004 Included in that claim is $2,836.19 under the order establishing the "reimbursement" and $3,000.00 for Archulleta, less $477.46 received between the date of entry of the above orders and the date of filing of the claim. The State of Alaska itself has filed no claim. During the pendency of Ward's Chapter 13 case, these claims have been paid in full.
On September 12, 1994 Ward filed a complaint seeking a permanent injunction against any collection efforts following the discharge in this case. After several amendments to the pleadings and as well as preliminary hearings, this complaint came before this court on March 23, 1995. At that time, the parties were offered an opportunity to present evidence and advance oral argument.

II. Analysis

A. Res Judicata
Counsel for Mr. Ward has alleged that the all matters regarding the amount and nature of Ward's child support debts have been fully litigated and determined by a court of competent jurisdiction. Thus, alleges Ward, any attempt to collect an amount above and beyond that ordered in the Talladega Circuit Court actions, is barred by the doctrine of res judicata. This court respectfully disagrees.
According to the uncontroverted assertions of counsel for the States of Alaska and Alabama, the common practice in URESA actions in the Talladega Circuit Court, is to determine a portion of the arrearages owed which will be enforceable by Alabama court order. See Trial Transcript, pp. 26-9. That is, the presiding judge will announce an amount which must be paid by the obligated party; however, for collection beyond that amount, the originating state must use other means such as attaching a party's IRS tax refunds.
Furthermore, even if the presiding judge in the circuit court action had in fact, attempted to modify or adjust the arrearages due to the State of Alaska, the Code of Alabama would prevent such acts. Alabama law on URESA actions is fairly well settled. Under the Uniform Reciprocal State Enforcement of Duty to Support Act, codified in Alabama at §§ 30-4-80 through 98, Alabama, as a "responding state" may have jurisdiction of the proceeding, § 30-4-93(a) and may modify future obligations. Murphy v. Murphy, 395 So.2d 1047 (Ala.Civ.App.1981) However, the state, when acting as a "responding state," may not modify or supersede any previous order regarding support obligations, Brown v. Brown, 476 So.2d 114 (Ala.Civ.App. 1985) and the determinations of the "initiating state" must be given "full faith and credit." Murphy, supra If the Talladega court actions in any way modified existing support obligations, than those actions were taken in violation of the state code.
Therefore, the doctrine of res judicata does not bar future collection efforts of any and all remaining liability for child support arrearage.

B. Dischargeability of the Debt
Mr. Ward's complaint seeking a permanent injunction is essentially a request for this court to hold that the child support debts are discharged through the successful completion of his Chapter 13 reorganization case. However, such a holding would violate both the letter and the spirit of the Bankruptcy Code.
Section 1328 provides for a general discharge of "all debts provided for by the plan. . . ." Specific debts, nevertheless, are excepted from discharge. Included in these exceptions are long term debts due after the termination of the plan, §§ 1328(a)(1), 1322(b)(5) debts arising out of criminal convictions, § 1328(a)(3), student loan obligations, §§ 1328(a)(2), 523(a)(8), DUI related debts, §§ 1328(a)(2), 523(a)(9) and, most importantly to the instant proceeding, alimony or child support obligations, §§ 1328(a)(2), 523(a)(5). Section 523, as it applies in limited form to Chapter 13 cases states in part:
§ 523. Exceptions to discharge.
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title *1005 does not discharge an individual debtor from any debt 
. . . . .
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that 
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support[.]
11 U.S.C. § 523(a)(5)
Courts which have interpreted this statute have consistently held that obligations which are actually in the nature of child support are clearly barred from discharge. In the Harrell case, the Eleventh Circuit unambiguously stated, that an agreement to pay child support and educational expenses is non dischargeable. In re Harrell, 754 F.2d 902 (11th Cir.1985) See also In re Petty, 60 B.R. 86 (Bankr.M.D.Ala.1986) (child support assigned to state agency is non-dischargeable); In re Delaine, 56 B.R. 460 (Bankr.N.D.Ala. 1985) (obligation to third party for the intended benefit of former spouse and children is in nature of alimony or support and thus non-dischargeable).
Furthermore, Congress has shown a clear intent to continually expand the protection of debts arising out of the termination of a marriage. The Bankruptcy Amendment of 1984 added alimony and child support debts assigned to a governmental entity to the discharge exception list. § 454(b) Bankr. Amends. and Federal Judgeship Act of 1984 The Bankruptcy Act of 1986 provided for debts arising out of court proceedings, administrative procedures, or expedited judicial processes. § 281 Bankr. Act of 1986 And most recently the 1994 Bankruptcy Reform Act provided two expansions to these protections: first, property settlements arising out of divorce are, with some limited exception, non-dischargeable, and second, the automatic stay provisions do not apply to actions to establish or modify an order for alimony, maintenance, or support out of non-estate property. § 304 Bankr. Reform Act of 1994
Finally, and most persuasively to this Court, the Bankruptcy Code on its face clearly indicates that child support debts are dischargeable only in two limited circumstances, where the debt, denominated as child support, is in fact not such, or, where the debt is assigned to an entity other than a governmental entity. There has been no dispute by Mr. Ward of the former, that is, this obligation is indeed in the character and nature of child support. Furthermore, the transfer of the right to recover this obligation was transferred to the a political subdivision of the State of Alaska and in due course the State of Alabama. Therefore, under the clear language of the Code, this obligation is non-dischargeable.

C. Amount of the Debt
In addition to Ward's plea to hold that the debts owed to the States of Alabama and Alaska for child support arrearage dischargeable, Ward also requested that this court determine the amount of the debt.
No federal court is in the business of dispensing advisory opinions. Petitioner apparently wishes for this court to instruct a state institution how to rule on a case pending in a state court. From Chief Justice *1006 John Jay's refusal to advise President Washington on questions of neutrality in the European War of 1793 see Laurence Tribe, American Constitutional Law 2d. § 3-9, and the Supreme Court's ruling in Hayburn's Case, 2 U.S. 408, 1 L.Ed. 436 (1792) refusing to give Congress and the Executive Branch advice on pension applications, courts of this land have steadfastly declined to assert any authority to rule where a case or controversy does not present itself. "Any judicial expression amounting to . . . an advisory opinion [is] given wholly without constitutional authority." Coleman v. Miller, 307 U.S. 433, 459, 59 S.Ct. 972, 984, 83 L.Ed. 1385 (Black, J., concurring)
Bankruptcy courts as well have taken this stricture to heart. For example, in the recent case of In re Inn on the Bay, Ltd., 154 B.R. 364 (Bankr.S.D.Fla.1993), Bankruptcy Judge A. Jay Cristol, declined to rule on the validity, priority and extent of liens allegedly secured by a Chapter 11 debtor's post-petition property tax, holding that where no useful purpose would be served, the Bankruptcy Court will not entertain the adversary proceeding. "Under the circumstances at bar, the adversary complaint seeks no more than an advisory opinion." Id. at 368.
Furthermore, there is a well established doctrine of abstention by federal courts. The Burford court stated that generally, federal courts should exercise their discretion to abstain from cases which would hinder state government efforts at carrying out their domestic policy. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Furthermore, the Younger line of cases instructs courts to abstain where a federal judgment will necessarily disrupt state proceedings in a area traditionally reserved to state law. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). And most recently, the Supreme Court held that considerations of judicial administration and conservation of judicial resources allows the abstention of a federal court in deference to parallel state litigation. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).
Bankruptcy Courts, in particular, have followed this federal mandate. For example, in Carver v. Carver, 954 F.2d 1573 (11th Cir. (Ga.) 1992) the Court of Appeals held that the bankruptcy court should abstain from hearing a Chapter 13 debtor's complaint where that complaint alleged a violation of a state court order. And in Kadel v. Thompson, 84 B.R. 878 (N.D.Ga.1988) the court abstained where "issues of state law predominated." See also Sabato v. Florida Department of Insurance, 768 F.Supp. 1562 (S.D.Fla., 1991); Su-Ra Enterprises, Inc. v. Barnett Bank of South Florida, N.A., 142 B.R. 502 (S.D.Fla., 1992); Southerland v. Smith, 142 B.R. 980 (M.D.Fla., 1992).
In a case similar to the matter now before the bar, the Eleventh Circuit held that the only appropriate determination is whether the debt arising out of the divorce is non-dischargeable. In re Harrell, 754 F.2d 902, 907 (11th Cir.1985) The determination of amount of the debt is reserved for the appropriate courts. Id. As the Harrell court stated,
The parties do not agree on the amount of debtor's arrearages. We decide here only that debtor's obligation is not dischargeable in bankruptcy. The precise terms under which debtor's obligation can be enforced must be determined by the appropriate state court, if necessary.
Id., ftnt 9.
This court has sympathy for Mr. Ward's plight. Evidence has been presented which could lead a reasonable person to conclude that Debtor in fact owes the State of Alaska significantly less than the amount that they are claiming outside of this bankruptcy proceeding. But the Bankruptcy Courts are not courts of general jurisdiction. Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Furthermore, the Eleventh Circuit has specifically held that the Bankruptcy Courts are not to sit in review of the state courts in regard to matters of divorce, custody, and support. Carver v. Carver, 954 F.2d 1573 (11th Cir.1992). To contest *1007 these amounts, Debtor must bring his complaint in the court of proper jurisdiction  the Alaska state courts.

III. Conclusion
Mr. Ward has asked this court to do two things: to establish the amount of the debt owed on his child support obligations, and to determine that this debt is dischargeable and therefore prevent any action to recover it after the conclusion of this bankruptcy proceeding. However, under the plain language of the Code, any and all child support obligations are non-dischargeable and the court lacks jurisdiction to render an advisory opinion declaring the amount of owed on this non-dischargeable debt. Therefore, the court must rule against Ward.
An appropriate order will enter.

ORDER ON COMPLAINT FOR PERMANENT INJUNCTION
By an opinion entered on this date, the court has concluded that the debts in question are non-dischargeable and that the court lacks sufficient jurisdiction to render an advisory opinion on the extent of the debt.
In accordance with the above findings, it is therefore ORDERED the child support obligations owed to Ms. Archulleta or her assigns are NON-DISCHARGEABLE. It is further ORDERED that Ward's Complaint for Permanent Injunction is decided in favor of defendants and no injunction will enter.
NOTES
[1] 11 U.S.C. § 101 et seq.