**MOTOR CLUB OF AMERICA, a New Jersey corporation; and Motor Club of America Insurance Company, a New Jersey domestic insurance company, Plaintiffs,**

v.

**Cathy J. WEATHERFORD, Commissioner of Insurance for the State of Oklahoma, Defendant,**

**and**

**Samuel F. Fortunato, Commissioner of Insurance for the State of New Jersey, Nominal Defendant.**

**Civ. A. No. 93-4818.**

United States District Court,
D. New Jersey.

Jan. 20, 1994.

**614**

Albert G. Besser, Joseph J. Fleischman, Stuart J. Glick, Hannoch Weisman, Roseland, NJ, for plaintiffs.

Andrew C. Jacobson, Deanne M. Wilson, Mound, Cotton & Wollan, East Hanover, NJ, for defendant Weatherford, Receiver for MCA Ins. Co.

Sharon M. Hallanan, Deputy Atty. Gen., Office of the Atty. Gen., Trenton, NJ, for Nominal defendant.

### OPINION

WOLIN, District Judge

Currently before the Court is the motion of plaintiffs Motor Club of America Insurance Company's ("Motor Club") and Motor Club of America ("Holding") for summary judgment and final judgment on the complaint. Also before the Court is the cross-motion of defendant Cathy Weatherford, the Commission of Insurance for Oklahoma ("Oklahoma Commissioner"), for summary judgment dismissing the complaint. The Court having read the papers submitted in support of and in opposition to the motions and having heard arguments of counsel shall deny both the motion and the cross-motion for summary judgment, but shall abstain from exercising its jurisdiction pursuant to *Burford.*

### BACKGROUND

A curious set of events have occurred that leads this matter to this Court: a corporate restructuring, a liquidation proceeding pending in Oklahoma, and a New Jersey action which the defendant removed and then asks the Court to abstain from exercising its jurisdiction.

### The Corporate Restructuring

At issue in this case is a corporate restructuring of MCA Insurance Company ("MCA-IC"). MCAIC is an Oklahoma domestic property and casualty insurance company which is now in liquidation. There are several factual issues in dispute concerning the execution of this transaction and its goals. But, it is uncontested what the transaction was supposed to accomplish vis-a-vis the corporate structure.

Before the transfer, Holding was the parent of MCAIC (the insolvent insurer). MCAIC was the parent of Property–Casualty Company of MCA ("PCCMCA"). PCCMCA (a New Jersey company) in turn owned 100% of the outstanding stock of Motor Club.

After the transfer, Holding remained the parent of MCAIC. And, MCAIC's relationship with PCCMCA remained unchanged (*i.e.,* MCAIC still was the sole holder of PCCMCA stock). But Motor Club was spun-off so that it became wholly owned by Holding.

The transfer was to be accomplished in three steps.[1] Step one required MCAIC to transfer all of its New Jersey automobile policies to Motor Club. Simultaneously,

---

1. Both the Oklahoma Commissioner and the New Jersey Commissioner approved the form of this transaction.

MCAIC, which had been a New Jersey insurer, became domesticated in the State of Oklahoma. Step two required PCCMCA to dividend its interest in Motor Club to its parent, MCAIC. In exchange for the stock, MCAIC paid "substantial sums out of . . . [its] capital surplus" Memorandum of Law of Defendant Receiver ("Defendant's Opposition Brief"), p. 3. Finally, MCAIC was to dividend the Motor Club stock to its parent Holding via an extraordinary dividend in step three.[2] Once the stock was at Holding, it was to distribute the stock to its public shareholders. While the inter-corporation transfers were effectuated, the final transfer from Holding to its public shareholders never occurred.

**The Oklahoma Actions**

On October 23, 1992, with the consent of MCAIC and Holding, the Oklahoma Commissioner instituted delinquency proceedings against MCAIC.[3] Pursuant to Oklahoma Uniform Insurers Liquidation Act, the Oklahoma Commissioner was appointed receiver for MCAIC. During the course of the liquidation proceedings, the Oklahoma Commissioner came into physical possession of the stock certificate of Motor Club which was being held in Newark, New Jersey by Holding.

The Oklahoma court has entered at least three injunctions during the pendency of the liquidation proceedings: An Order appointing the receiver and preliminary injunction, entered on October 23, 1992; a Supplemental Order of Liquidation, dated October 30, 1992; and a Restated Supplemental Order of Liquidation, dated October 21, 1993. All three orders contained injunctions restraining the commencement or pursuit of any proceedings against the Receiver, MCAIC, or the assets of MCAIC.

On April 14, 1993, the Oklahoma Court issued an order clarifying continuing injunctions and extending the stay of actions. *See* Affidavit of Deanne M. Wilson ¶ 5. In that order the Court permanently enjoined "all

actions to enforce or pursue claims against MCAIC, its property, the MCAIC estate and/or Receiver" except for limited claims which are not applicable here. *Id.* Exhibit D.

During the course of the receivership, the Oklahoma Commissioner became aware of the now alleged avoidability of the transfer pursuant to Oklahoma Statute section 1926.A. On August 9, 1993, the Oklahoma Commissioner instituted a civil action in the state court of Oklahoma on behalf of MCAIC against Holding. The suit seeks to (i) reverse the July, 1992 dividend from MCAIC to Holding, (ii) avoid her prior approval of that transaction, and (iii) effectuate the acquisition and control of Motor Club. In other words, the Oklahoma Commissioner is only trying to undo step three of the transfer. If successful, Motor Club would become a subsidiary of the insolvent MCAIC.

Defendant in that action, Motor Club, filed several applications, including an application for an extension of time to answer, an application to stay discovery and two motions to dismiss for lack of personal jurisdiction. The court noted defendant's objection in the first motion to dismiss for lack of jurisdiction and allowed the Oklahoma Commissioner to replead within ten days, or by November 15, 1993. The Oklahoma Commissioner did replead within the ten day time period, specifically setting forth jurisdictional bases in the amended petition. That action is currently pending in Oklahoma.

**The New Jersey Action**

Despite the pendency of the Oklahoma action and the continuing injunctions, plaintiffs Holding and Motor Club filed the instant action in Superior Court of New Jersey, Chancery Division, Essex County, on September 30, 1993. They sought declaratory, injunctive and other equitable relief to prevent the Oklahoma Commissioner from seiz-

---

2. The parties dispute whether steps two and three were done simultaneously on July 15, 1992 or whether step two occurred in May of 1992 followed by step three occurring in July 1992.

3. Delinquency proceedings were apparently caused by insurance claims surrounding Hurricane Andrew. Because Hurricane Andrew decimated MCAIC and with a view to conserving capital, Holding did not distribute the stock of Motor Club to its public shareholders.

ing control and ownership of Motor Club. According to plaintiffs, the Oklahoma Commissioner is in violation of the New Jersey Holding Company Systems Act, N.J.S.A. 17:27A–1 *et seq.* ("New Jersey Holding Company Act"), which prohibits any person from seeking to acquire, or engaging in any activity which results in a person acquiring, directly or indirectly, any voting security of a domestic insurer if, after the consummation thereof, such person would be in control of such domestic insurer, unless that person has sent to the insurer and filed with the New Jersey Commissioner a statement containing the information required by this act and such acquisition has been approved by the New Jersey Commissioner. *See* Brief of Nominal Defendant New Jersey Insurance Commissioner ("NJ Commissioner's Opposition Brief), p. 7–9.

Plaintiffs seek a judgment declaring the Oklahoma Commissioner in violation of N.J.S.A. 17:27A–2a and enjoining and restraining the Oklahoma Commissioner from attempting to acquire Motor Club. In addition, plaintiffs seek a judgment declaring Holding the owner of all of the outstanding stock of Motor Club, directing the Oklahoma Commissioner to return the stock certificate of Motor Club to Holding, and enjoining and restraining the Oklahoma Commissioner pursuant to N.J.S.A. 17:27A–8c from seizing the outstanding stock of Motor Club.

Three weeks after plaintiffs filed their complaint, they filed a motion for summary judgment, returnable on November 19, 1993. On October 29, 1993, the Oklahoma Commissioner removed the action to this Court on the basis of diversity jurisdiction. In response to plaintiffs' motion, the Oklahoma Commissioner cross-moved for summary judgment dismissing the complaint.

**The Interstate Compact**

After the Oklahoma Commissioner submitted her opposition brief and notice of cross-motion for summary judgment, she and the nominal defendant, Samuel Fortunato, the New Jersey Commissioner of Insurance ("New Jersey Commissioner") reached an agreement. In a letter brief dated December 21, 1993, the New Jersey Commissioner outlined the written accommodation made with the Oklahoma Commissioner.

The Commissioners' agreement provides that, at this time, they believe the proper forum for the litigation between Oklahoma Commissioner and Motor Club is in the Oklahoma liquidation court. According to them, Oklahoma law controls whether the transfer is voidable. Further, litigating this issue in Oklahoma would allow the Oklahoma Commissioner to fulfill her statutory responsibilities as the liquidator of MCAIC while preventing a conflict between the Commissioners. The Commissioners have agreed that if the Oklahoma court finds the transfer voidable and the Oklahoma Commissioner is declared the owner of the stock, then the Holding Company Act is implicated and New Jersey is the proper forum for any disputes arising therefrom. Conversely, if the transfer is affirmed then Holding is declared the owner of the stock and there is no further need for litigation. *See* December 21, 1993 Letter from Sharon Hallanan.

**DISCUSSION**

The origin of this action and the present dispute would whet the appetite of legal academicians for years to come. It involves novel legal issues and a potpourri of parties. Fortunately or unfortunately, as the case may be, the Court will not be addressing all of the novel legal issues here. What the Court will address is the novel issues of conflicting statutory authority between two states' Insurance Commissioners under insurance regulatory schemes which most states share. The two insurance regulatory schemes are the Insurance Holding Company Systems Act statutes and the Insurance Rehabilitation and Liquidation statutes.

Under the Holding Company Systems statutes, the Insurance Commissioner regulates changes of control over insurance companies, to ensure that such changes of control are not against the best interests of the insurance policyholders. Under the Insurance Rehabilitation and Liquidation statutes, the Insurance Commissioner gathers the assets of a troubled insurance company and either seeks to rehabilitate the company to solvent operations or distributes the assets among

the policyholders and other claimants and closes out the affairs of the troubled company. Both New Jersey and Oklahoma have some form of these statutes, as will be discussed more fully within.

Plaintiffs filed their Complaint under and seek summary judgment based upon the New Jersey version of the Holding Company Systems Act, N.J.S.A. 17:27A–1 *et seq.* (hereinafter "NJ Holding Company Act"). The Holding Company Act provides:

> No person other than the issuer shall ... seek to acquire, or acquire, in the open market or otherwise, any voting security of a domestic insurer, if after the consummation thereof, such person would, directly or indirectly ... be in control of such insurer ... unless, at the time any such offer, request, or invitation is made or any such agreement is entered into, or prior to the acquisition of such securities if no offer or agreement is involved, such person has filed with the [New Jersey] commissioner and has sent to such insurer ... a statement containing the information required by this section and such offer, request, invitation, agreement or acquisition has been approved by the [New Jersey] commission.

N.J.S.A. 17:27A–2(a).[4] The statute is clearly aimed at controlling mergers and acquisitions of New Jersey insurers.

The filing required by this Act must provide significant detail regarding the persons involved in the acquisition and the nature of the agreements involved in the change of ownership and control. N.J.S.A. 17:27A–2(b). More importantly, especially in this context, the filing is to contain "[a]ny plans or proposals which each acquiring party may have to liquidate such insurer, to sell its assets or merge or consolidate it with any person, or to make any other material change in its business or corporate structure of management." N.J.S.A. 17:27A–2(b)(4).

Approval by the New Jersey Commissioner of any merger or acquisition appears to be a foregone conclusion unless after a public departmental hearing he makes certain findings enumerated in the statute. *See id.* § 27A–2(d). These findings include a determination that

> [t]he financial condition of any acquiring party is such as might jeopardize the financial stability of the insurer, or prejudice the interest of its policyholders[; or]
>
> ...
>
> [t]he financial condition of any acquiring party is such that (a) the acquiring party has not been financially solvent[, or] ...
>
> [t]he plans or proposals which the acquiring party has [concerning the disposition of the insurer] ... are unfair and unreasonable to policyholders of the insurer and not in the public interest[.]

*Id.* § 27A–2(d)(1)(iii), (iv), (v). It is clear that where, as here, a potential change of control would mean that Motor Club would be controlled by MCAIC—a company in liquidation—the New Jersey Commissioner would have concerns. He would need to determine whether a transfer of the stock to the Oklahoma Commissioner would be "unfair and unreasonable to policyholders of" Motor Club "and not in the public interest." *Id.* § 27A–2(d)(1)(v). He also would need to determine whether the contemplated transfer is "likely to be hazardous or prejudicial to the insurance buying public." *Id.* § 27A–2(d)(1)(vii).

The Oklahoma Commissioner submits that, to the extent she is required to do so under the Act,[5] "all necessary information was provided by service of a copy of the petition filed in Oklahoma on August 9, 1993". Answer, Affirmative Defenses and Counterclaim of Oklahoma Commissioner ("Oklahoma Answer"), ¶ 49. The New Jersey Commissioner challenges the sufficiency of this information. *See* Brief of Nominal Defendant New Jersey Commissioner Samuel F. Fortunato in Re-

---

4. As is often the case with insurance regulatory statutes, the Holding Company Act was based on a model developed by the National Association of Insurance Commissioners. Oklahoma has also enacted such legislation. *See* Okla.Stat.Ann. art. 16A. § 1651 *et seq.*

5. The Oklahoma Commissioner argues that the Act is not applicable to her because she is acting as a sovereign, not an individual. The Court does not need to resolve whether the Act applies to her given that the Court will abstain.

sponse to Plaintiffs' Motion for Summary Judgment ("NJ Commissioner's Brief"), p. 10.

Plaintiffs ask the Court to find the Oklahoma Commissioner in violation of the Act and to apply the sanction provided in the Act. The Act provides the court with the power to sequester the stocks involved whenever it appears that the Act has been or is about to be violated. Section 27A–8c of the New Jersey Holding Company Act states that

> In any case where a person has acquired or is proposing to acquire any voting securities in violation of this chapter ... the Superior Court may ... seize or sequester any ... securities of the insurer owned directly or indirectly by such person, and issue such orders ... as may be appropriate to effectuate the provisions of this chapter.

Thus, plaintiffs want this Court to recover the stock from the Oklahoma Commissioner.

While the New Jersey Commissioner and plaintiffs are relying on the directives and requirements of the Holding Company Act, the Oklahoma Commissioner is operating under Oklahoma state statutes. Insurance companies are precluded by law from filing for federal bankruptcy protection. 31 U.S.C. § 3713. Therefore, if an insurance company is financially troubled, the Insurance Rehabilitation and Liquidation statutes (hereinafter "Uniform Liquidation Act"), provides a state's insurance commissioner with broad authority for dealing with insolvent insurance companies domiciled in that state. Oklahoma has adopted the Uniform Liquidation Act. *See* 36 Okla.Stat. § 1901 *et seq.*[6] Under the Oklahoma version of the Insurance Rehabilitation and Liquidation Act (hereinafter "Oklahoma Liquidation Act"), only the Oklahoma Commissioner can place an Oklahoma insurer into liquidation or rehabilitation proceedings. And, only the Commissioner can be named as receiver.

The Oklahoma Liquidation Act provides for exclusive or original jurisdiction over delinquency proceedings in the Oklahoma state courts. 36 Okla.Stat. § 1902. It further mandates that pertinent delinquency pro-

ceedings "shall constitute the sole and exclusive method of liquidating an insurer" and precludes any other court from entertaining any similar procedure unless instituted by the pertinent commissioner.· *Id.* § 1902(C). Oklahoma courts will issue injunctions to restrain all persons from wasting or disposing of an insolvent insurer's property, to restrain actions that may interfere with the receiver or the delinquency proceeding and to restrain any actions against the insurer or its assets. 36 Okla.Stat. § 1904.

The Act's breadth reflects the need to fully protect the insolvent insurer's policyholders, who are generally unfamiliar with the financial condition of the insurer and rely on state regulation to ensure that the promise of payment on their insurance policies at some future date will come to fruition. In reflecting such an important and overwhelming public policy, the Act confines any proceeding involving an insolvent insurer to the domiciliary state if liquidation proceedings have commenced, or to a reciprocal state if ancillary proceedings have been commenced. Thus, all claims against an insolvent Oklahoma insurer are to be brought in Oklahoma, whether or not the claims are brought by an out-of-state claimant or an in-state claimant. 36 Okla.Stat. §§ 1916, 1917. This extraordinary confinement of proceedings serves the purpose of the Liquidation Act by providing uniformity of application in the insolvency context. 36 Okla.Stat. § 1921.

## A. Abstention

 This Court's jurisdiction is predicated on diversity of citizenship. As a general rule, this court is bound to resolve all disputes within its jurisdiction. *New Orleans Public Service, Inc. v. Council of City of New Orleans* ("NOPSI"), 491 U.S. 350, 358–59, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989); *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir.1991). However, a federal court's "virtually unflagging obligation" to exercise its jurisdiction may be waived even though all jurisdiction and justiciability requirements are met. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817,

---

**6.** The law of the State of New Jersey is comparable. *See* N.J.S.A. 17:30C–1 *et seq.*

96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under certain limited circumstances, a federal court may abstain from exercising its grant of jurisdiction due to overriding principles of "federalism, comity and judicial economy." *Grode v. Mutual Fire, Marine & Inland Insurance Co.*, 8 F.3d 953, 958 (3d Cir.1993), *citing Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer*, 832 F.2d 240, 242 (1st Cir.1987).

Because abstention is "the exception, not the rule," *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir.1992), the Supreme Court has carefully defined the areas in which abstention is permissible. *See United Services Auto Ass'n v. Muir*, 792 F.2d 356, 361 (3d Cir.1986).

■ The Oklahoma Commissioner asserts that abstention is appropriate in the instant matter pursuant to the *Burford, Colorado River*, and *Younger* doctrines. The *Burford* abstention, first enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), permits a federal court presented with basic problems of state policy pertaining to regulation of important state matters to abstain from exercising its jurisdiction when it would disrupt an important and complex state regulatory system. A somewhat related doctrine, the *Colorado River* abstention, allows a federal court to defer to concurrent state court proceedings addressing the same issue. *Colorado River*, 424 U.S. at 815, 96 S.Ct. at 1245. A third doctrine is found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 which permits a federal court to abstain because there is an on-going judicial proceeding regarding a vital state interest. *See Grode*, 8 F.3d at 960.

**1. Which Law to Apply When?**

■ The crux of abstention according to any of these doctrines is that there are important state interests which a federal court should not interfere with. Before determining whether abstention is appropriate, the Court must resolve which state law provides the basis for abstaining.

■ A federal court, acting pursuant to its diversity jurisdiction, must apply the substantive law of the state within which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the state's choice of law provisions. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Henry v. Richardson–Merrell, Inc.*, 508 F.2d 28, 31 (3d Cir.1975). Since New Jersey is the forum state, this court will look to New Jersey's choice of law provisions to determine which state's law will apply to this action.

■ New Jersey has adopted the conflict of laws principles which do not require that all legal issues presented by a single case be decided under the law of a single state. *O'Connor v. Busch Gardens*, 255 N.J.Super. 545, 547, 605 A.2d 773 (App.Div.1992); *Johnson Matthey, Inc. v. Pennsylvania Manufacturers Ass'n Ins. Co.*, 250 N.J.Super. 51, 65–66, 593 A.2d 367 (App.Div.1991). Choice of law decisions should be made on an issue-by-issue basis. Thus, the law of different states can apply to different issues in the same case. *Id.* 255 N.J.Super. at 547, 605 A.2d 773.

The Court is presented with two issues in the matter *sub judice:* the liquidation/avoidance issue and the compliance issue. It is clear that the law of Oklahoma should be applied to the issues concerning the liquidation of MCAIC and recovery of the stock.[7] It is equally clear that the law of New Jersey governs the disposition of the Holding Company Act issue.

---

7. New Jersey has adopted a governmental interest test in resolving choice of law issues. *Hoffman Equipment, Inc. v. Clark Equipment Co.*, 750 F.Supp. 1222, 1229 (D.N.J.1990) (citations omitted). First, the court must consider the governmental policies reflected by the laws of the interested states. *Petrella v. Kashlan*, 826 F.2d 1340, 1343 (3d Cir.1987); *Pine v. Eli Lilly & Co.*, 201 N.J.Super. 186, 191, 492 A.2d 1079 (App.Div. 1985). Then, the Court must analyze the contacts each state has with the parties and the litigation. *Id.* 826 F.2d at 1343. The Court concludes that no conflict exists between the laws of Oklahoma and New Jersey on this issue.

But, the Court faces the question of which law should be applied in its abstention analysis. The Oklahoma Commissioner posits that the public interests underlying the two insurance regulatory schemes of concern in this action—the New Jersey Holding Company Act and the Oklahoma Liquidation Act—require that one takes precedence over the public interests of the other. Specifically, she argues that the public interests underlying the Liquidation Act take precedence over the public interests underlying the Holding Company Act.

The Oklahoma Commissioner argues that "[t]he interest to be served by an unflinching application of the ... [Oklahoma Liquidation Act] is obviously the emergent management of the assets of the insolvent insurer to bring value back into the receivership estate to pay claims and protect policyholders (citations omitted)." Memorandum of Law of Defendant Receiver in Opposition to Plaintiffs' Motion for Summary Judgment ("Oklahoma Commissioner's Opposition Brief"), p. 8. The Oklahoma Commissioner submits that the public interests underlying the Oklahoma Liquidation Act and the need for delinquency proceedings situated in the insolvent insurer's domiciliary state to be the exclusive means of resolving disputes in the context of an insurer insolvency are "extraordinary and overwhelming" and should therefore take precedence over the Holding Company Act.

Second, the Oklahoma Commissioner points to the injunction issued by the Oklahoma state court to demonstrate that the Liquidation Act should take precedence. The state court of Oklahoma has issued three injunctions restraining all persons from commencing or prosecuting any action against the Receiver or MCAIC or its assets. The injunctions were issued to serve the interests underlying the Liquidation Act: to allow the liquidator and the court to apply their expertise to the issues presented; to avoid outside interference with liquidation proceedings; to eliminate the possibility of conflicting rules, piecemeal litigation and unequal treatment of claimants; and to reduce the delay, inefficiency and waste of limited assets attendant to defending claims in multiple fora. While the injunctions may not be binding restraints on

federal proceedings, the Oklahoma Commissioner suggests that it would thwart the purposes of the Act to allow plaintiffs to sidestep the injunctions by filing here.

Additionally, pursuant to the New Jersey version of the Liquidation Act, the Oklahoma Commissioner submits that the state courts of New Jersey would apply the Liquidation Act and decline to rule on the Holding Company Act issue. The New Jersey adoption of the Uniform Liquidation Act incorporates a prohibition of any action or proceeding in the state in the nature of an attachment, garnishment or execution during the pendency of delinquency proceedings in another state, N.J.S.A. 17:30C–22, and provides for restraints against commencement of any actions against an insolvent insurer or its assets. *Id.* § 17:30C–5(a). New Jersey state courts have recognized that an injunction issued by a receivership court in another state prohibiting litigation against the receiver or the insolvent insurer should operate to deprive the New Jersey state courts of jurisdiction. *See, e.g., Murphy v. Ambassador Ins. Co.,* 195 N.J.Super. 274, 282, 478 A.2d 1243 (Ch.Div.1984) (declining to adjudicate because domiciliary state of Vermont proper forum for all proceedings concerning assets of insolvent insurer); *Zullo Lumber v. King Construction,* 146 N.J.Super. 88, 93–94, 368 A.2d 987 (Law Div.1976). The federal courts of New Jersey have also supported the concept of unification of proceedings against insolvent insurers. *See Ballesteros v. N.J. Prop. Liab. Ins. Guar. Ass'n,* 530 F.Supp. 1367, 1371 (D.N.J.1982). The coalescence of both the state and federal courts of New Jersey in the view that the claims of residents against insolvent foreign insurers should be brought in the domiciliary state militates towards applying Oklahoma law first.

Finally, she asserts the common sense of this situation suggests that the Holding Company Act may never be implicated. The only time the New Jersey law would come into play is if the Oklahoma Commissioner were to ultimately prevail on her arguments regarding the stock of Motor Club. If she is allowed to set aside the transfer, then and only then would she need to comply with the

requirements of the Holding Company Act. The interstate compact between the two Commissioners reflects this approach. The essence of the Oklahoma Commissioner's argument is that the breadth of the objectives of the Oklahoma Liquidation Act dictates that it should take precedence over the New Jersey Holding Company Act.

Plaintiffs argue that this is not an issue of when should the New Jersey law apply. Rather, plaintiffs posit the issue is whether the New Jersey Holding Company Act applies. Plaintiffs point to the language of the Holding Company Act to argue that it is applicable right now. The Holding Company Act states that any activity directed towards the acquisition of a domestic insurer—not just the actual acquisition of an insurer—falls within the purview of the act. Just this past August, the New Jersey legislature underscored this by amending the statute to provide that "the effectuation of, *or any attempt to effectuate,* an acquisition of control of, or merger with, a domestic insurer" without the New Jersey Commissioner's approval is a violation of the Holding Company Act. *See* N.J.S.A. 17:27A–2g, as amended by New Jersey P.L.1993, Chapter 241, 1993 Assembly Bill No. 82 (amendment underlined).

Plaintiffs view the interstate compact, which embodies the approach to prioritize one statute, as an apparent attempt of the New Jersey Commissioner to exempt the Oklahoma Commissioner from compliance with the New Jersey Holding Company Act. While the Act provides that the New Jersey Commissioner can exempt a party from compliance, according to plaintiffs, the New Jersey Commissioner has not followed the letter of the law concerning exemptions. N.J.S.A. 17:27A–2(f)(2) provides:

> Any offer, request, invitation, agreement or acquisition which the commissioner by order shall exempt therefrom as (a) not having been made or entered into for the purpose and not having the effect of changing or influencing the control of a domestic insurer, or (b) as otherwise not comprehended within the purposes of this section....

Unfortunately, the New Jersey Commissioner has not complied with the terms of the statute: he has not entered an order waiving the Oklahoma Commissioner's compliance. More significantly, according to plaintiffs, the New Jersey Commissioner cannot enter such an order here. Plaintiffs, however, are not specific as to why, but rather note that "the Oklahoma Commissioner's continuing attempt to acquire control of a New Jersey domestic insurer [Motor Club] on behalf of an insolvent Oklahoma Insurer [MCAIC] is not the kind of activity which even could be considered for exemption under N.J.S.A. 17:27A–2f(2)." *See* Dec. 23, 1993 letter from Joseph Fleischman, Esq.

 Thus, the Court is faced with a dilemma: which law should be applied in determining whether abstention is proper. The Court has found no law to guide it in making this Solomon-like choice. And, besides the arguments detailed above, the parties have not provided any law. The Court concludes that suppletive rules are necessary.[8] *See Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 776 F.Supp. 970 (D.N.J.1991). Such rules suggest that while this is not a choice of law problem, it is analogous to one. Hence, this court should apply a governmental interest analysis-type test as it would to a clear choice of law analysis.

 The governmental interest analysis applied in the choice of law context was clearly explained by the New Jersey Supreme Court in *Veazey v. Doremus,* 103 N.J. 244, 248, 510 A.2d 1187 (1986). This Court must first decide if there is a conflict between the laws of the interested states. If there is, the next step is to identify the governmental policies underlying the competing laws, and how those policies would be affected by applying one law before the other with a view to determining which law should be the basis for abstaining.

The Court will start by looking at the Oklahoma Liquidation Act. The Oklahoma Liquidation Act is based on the Uniform Liquidation Act. The Uniform Liquidation

---

**8.** The Oxford English Dictionary defines "suppletive" as: "Having the attribute of supplying defi-ciencies." Oxford English Dictionary 203 (1980).

Act, adopted by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1939, was prompted by problems of interstate rehabilitation and liquidation of insolvent insurers. *See* Prefatory Note to the Uniform Insurers Liquidation Act, 13 U.L.A. 322 (1986 & Supp. 1991). The stated purpose of the Uniform Liquidation Act was to lessen the problems incurred when an insolvent insurer has assets and liabilities in multiple states by providing a uniform act with reciprocal provisions that could be adopted by all states. *Id.* at 323. The Uniform Liquidation Act was designed to remedy six areas of concern: (1) the designation of the insurance commissioner of the domicile state as the receiver for an insurer; (2) authority for domiciliary receivers to proceed in non-domiciliary states; (3) vesting of title to assets in the domiciliary receiver; (4) provision for non-domiciliary creditors to have the option to proceed with claims before local ancillary receivers; (5) uniform application of the laws of the domiciliary state to the allowance of preferences among claims; and (6) prevention of preferences for diligent non-domiciliary creditors with advance information. *See Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.*, 646 F.Supp. 1139, 1141 (S.D.N.Y.1986), *aff'd*, 812 F.2d 713 (2d Cir.1987). *See also* Uniform Insurers Liquidation Act, Prefatory Note.

*Matter of Mutual Benefit Life Ins. Co.*, 258 N.J.Super. 356, 368, 609 A.2d 768 (App.Div. 1992).

Thus, the purpose of the Uniform Liquidation Act is to "provide for a uniform, orderly and equitable method of making and processing claims against financially trouble insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, distributing their assets." *Id.* at 368, 609 A.2d 768 (citations omitted). In order to effectuate this purpose, the Uniform Liquidation Act, and the Oklahoma version of it, grant the insurance commissioner and the state court broad powers. As the express powers have been enu-

merated. *supra*, they will not be repeated here.

 The Court is mindful that the statute which the Oklahoma Commissioner is using to recover the stock—36 Oklahoma Statute section 1926—is not part of the Uniform Liquidation Act or the Oklahoma Liquidation Act. Plaintiffs would have this Court hold that because of this, the policy concerns underlying either the Uniform or Oklahoma Liquidation Act are inapplicable. What plaintiffs have overlooked is that but for the liquidation proceedings, the Oklahoma Commissioner would be unable to attempt to recover the stock pursuant to 36 Oklahoma Statute section 1926. Section 1926 states that every transfer made by an insurer within one year of its insolvency may be avoided. That the Oklahoma Commissioner's action is intimately related and intertwined in the liquidation of MCAIC finds support in the fact that that action is assigned to the same court and the same judge as is overseeing the liquidation.[9]

By applying the Oklahoma Liquidation Act first, the Court will be protecting the Oklahoma Commissioner's regulatory position. She will be allowed to marshall the assets of MCAIC with a view to bringing value into the receivership to pay claims and protect policyholders.

 Now, the Court turns its attention to the New Jersey Holding Company Act. The goal of the Holding Company Act is to promote disclosure and approval of changes in control of insurers domiciled in New Jersey to protect policyholders within the state. The Holding Company Act, like the Liquidation Act, recognizes that most policyholders are ignorant of the financial health of an insurer and thus vests the New Jersey Commissioner with the ability to control mergers and acquisitions for their benefit.

 The language of the Holding Company Act is clear and thus should be given its ordinary meaning. *See e.g., Merin v. Maglaki*, 126 N.J. 430, 434, 599 A.2d 1256 (1992) (construction of any statute begins with con-

---

**9.** Thus, hereinafter, references to the Liquidation Act denote both the Oklahoma Liquidation Act and 36 Oklahoma Statute section 1926, unless otherwise indicated.

sideration of its plain language); *Town of Morristown v. Woman's Club*, 124 N.J. 605, 610, 592 A.2d 216 (1991) (such language should be given its ordinary meaning, absent a legislative intent to the contrary). It should apply whenever there is any attempt to change control of a New Jersey insurer.

Nevertheless, if the Court were to start its analysis based on the New Jersey Holding Company Act it would thwart the objectives of the Oklahoma Liquidation Act. The policies underlying N.J.S.A. 17:27A–2a would restrain the Oklahoma Commissioner from attempting to acquire Motor Club. Accordingly, it would inevitably interfere with the liquidation proceedings and the Oklahoma Commissioner's ability to marshal the assets of MCAIC wherever they are located.

Conversely, if the Court were to start its analysis premised on the Oklahoma Liquidation Act, it would not make the New Jersey law a nullity. In fact, such a disposition is in keeping with New Jersey's policy favoring the insurance commissioner's recovery of assets of an insolvent.

Coequivalent with the New Jersey Holding Company Act's requirements concerning application and approval for changes in ownership are provisions in the New Jersey statute that allow the New Jersey Commissioner to recover an avoidable transfer. *See* N.J.S.A. 17:27A–9, P.L.1993, C 41. These provisions which, like the Oklahoma avoidance provision is not part of the Uniform Act, do not mandate that the New Jersey Commissioner must have approval to recover a distribution. In fact, the provisions—unfettered by notice, application or approval requirements—highlight New Jersey's policy favoring recovery powers of the insurance commissioner in the context of an insolvency proceeding over the interests to be served by compliance with the Holding Company Act's approval and notice requirements.

Finally, as the interstate compact suggests, avoidability is the key issue. The policies underlying the New Jersey Holding Company Act may not be implicated if the stock is not recoverable. If the Oklahoma Commissioner is allowed to set aside the transfer and recover the Motor Club stock, then and only then would New Jersey's con-

cerns about regulating and controlling acquisitions of domestic insurers be of concern. Thus, common sense dictates that the Holding Company Act should give way to the Liquidation Act for the purpose of this Court's abstention analysis.

### 2. *Burford* Abstention

■ The *Burford* abstention doctrine provides for the exercise of equitable discretion by federal courts to refrain from deciding questions involving basic problems of state policy pertaining to the regulation of important state concerns. In *Burford*, the plaintiff sought to enjoin the Texas Railroad Commission's decision to grant the right to drill four oil wells to a competitor. *Burford*, 319 U.S. at 316–317, 63 S.Ct. at 1098–1099. The Supreme Court upheld the district court's decision refusing to review the grant of the permit and dismissing the case. *Id.* at 324, 63 S.Ct. at 1102. The Court reasoned that because the state of Texas (i) had created an elaborate regulation system to deal with the geological complexities of oil and gas fields, and (ii) had centralized judicial review in a single state district court which had developed the "specialized knowledge which is useful in shaping the policy of regulation of the ever-changing demands in this field," *id.* at 327, 63 S.Ct. at 1104, the action could not be resolved without impermissibly disrupting and unduly intruding into the state's well organized system of regulation and review. *Id.* at 334, 63 S.Ct. at 1107. If the federal court heard this case it would only create unnecessary confusion and "as a practical matter, the federal courts can make small contribution to" this complex state regulatory system. *Id.* at 327, 63 S.Ct. at 1104. The Court concluded that under these circumstances "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 334, 63 S.Ct. at 1107.

■ As read in subsequent cases, *Burford* limits "interference by the federal courts in determinations of inherently local matters made by state courts pursuant to a complex state regulatory scheme." *University of Maryland v. Peat Marwick Main &*

*Co.,* 923 F.2d 265, 270 (3d Cir.1991). Where a complex regulatory scheme is established and is central to state interests, abstention is appropriate if "the district court's exercise of jurisdiction would interfere with ongoing proceedings pursuant" to that regulatory mechanism, *General Glass Industries Corp. v. Monsour Medical Foundation,* 973 F.2d 197, 201 (3d Cir.1992), or if the federal court had to deal primarily with state law issues where exercise of such jurisdiction will disrupt the state's efforts to "establish a coherent policy with respect to a matter of substantial public concern." *Lac D'Amiante du Quebec v. American Home Assur. Co.* ("LAQ"), 864 F.2d 1033, 1043 (3d Cir.1988), *quoting Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. Thus, a federal court sitting in equity must decline to interfere with proceedings or orders of state administrative agencies

> [w]here timely and adequate state court review is available ... [and] (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*NOPSI,* 491 U.S. 350, 360, 109 S.Ct. 2506, 2514 (citation omitted).

The Third Circuit has specifically held that abstention from the exercise of federal jurisdiction over claims arising out of state regulation of insolvent insurance companies is particularly appropriate. *LAQ,* 864 F.2d 1033; *Grode,* 8 F.3d at 959; *General Glass v. Monsour Medical Foundation,* 973 F.2d 197, 204 (3d Cir.1992). In *LAQ,* The court stated:

> Our analysis must begin with the proposition that the *regulation of insurance companies* unable to meet their obligations entails the type of strong state interest in which application of *Burford* abstention is appropriate. Like the valuable natural resource involved in *Burford,* solvent and health insurance coverage is an essential state concern. The McCarran–Ferguson Act specifically provides that it is in the public interest for states to continue serv-

> ing their traditional role as the *preeminent regulators* of insurance in the federal system and indicates the special status of insurance in the realm of state sovereignty.

*Grode,* 8 F.3d at 958 (emphasis in original), *citing LAQ,* 864 F.2d at 1045 (citation omitted). Consequently, the *LAQ* court concluded that "assumption of jurisdiction by the federal court in a suit *against* an insolvent insurer in liquidation proceedings would be highly disruptive of the state's regulatory scheme." *LAQ,* 864 F.2d at 1045.

Nevertheless, the Supreme Court has emphasized that *Burford* abstention requires more than a desire to avoid disrupting a state regulatory system.

> [W]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict with state regulatory law or policy.'

*NOPSI* 491 U.S. at 362, 109 S.Ct. at 2514. Consequently, "the mere existence of state administrative procedures, or even a complex state administrative apparatus, does not necessarily warrant abstention." *University of Maryland,* 923 F.2d at 272 (citation omitted).

■ Because a mere avoidance of disruption rationale "would justify abstention in any instance where a matter was within an administrative body's jurisdiction," a *Burford* abstention requires, "among other considerations, that the regulatory system have as a central purpose uniformity to achieve important local interests that would be frustrated by federal court review." *Id.; Grode,* 8 F.3d 953. For example, in *Grode,* the Third Circuit found abstention inappropriate when the insolvent insurer instituted an action to recover an alleged debt. *Id.* at 959. The court held simple debt actions that happen to involve insolvent insurers are "not matters of important regulatory concern or actions interfering with important state policies." *Id.* The district court need look only to the four corners of the document to determine the claim, not to state policies or laws. Consequently, "the mere existence of state administrative procedures, or even a complex state

administrative apparatus, does not necessarily warrant abstention." *University of Maryland*, 923 F.2d at 272 (citation omitted).

■ The circumstances of this case fit squarely within the *Burford* doctrine. As discussed above, Oklahoma has formulated a detailed, specialized and complex scheme to oversee the liquidation of insolvent insurers. The provisions of the statute, the Oklahoma Liquidation Act, specify not only that the venue of any delinquency proceedings shall be in Oklahoma, but they grant to that court "exclusive original jurisdiction of delinquency proceedings. Okla.Stat. tit. 36 § 1902(A)." *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 705 (10th Cir.1988) (applying Oklahoma law). Oklahoma, therefore, has not only enacted a comprehensive scheme to regulate insolvent insurers, but also provided a particular court to oversee the liquidation proceedings. *Id.*

Moreover, the Oklahoma state court is a "working partner with the [Oklahoma] Insurance Commissioner." *Burford*, 319 U.S. at 326–27, 63 S.Ct. at 1103–04. Not only does the state court oversee the insolvency proceedings, it issues the order for rehabilitation, enjoins suits against the insolvent insurer to protect the estate. *See LAQ*, 864 F.2d at 1045. The effect of this scheme is that the Oklahoma state courts share with the Oklahoma Commissioner a "special relationship of cooperation, technical expertise, and concentrated review." *Grimes*, 857 F.2d at 670 (10th Cir.1988).

Assumption of jurisdiction by a federal court in this suit would be highly disruptive of Oklahoma's regulatory scheme. The structure of the Oklahoma system serves the state's strong interest to confine any proceedings involving an insolvent insurer to a single forum—Oklahoma. *See LAQ*, 864 F.2d at 1045. Interference by this Court would perhaps encourage claimants of an insolvent insurer to evade the state proceedings and institute suit in various federal fora based upon diversity of citizenship. This would not only foster disunity in liquidation proceedings but more importantly would force the insurance commissioner to litigate cases without the control of the delinquency court. In other words, the goals of efficiency, uniformity and equity contained in the Oklahoma law would be lost. This type of disruption is just what *Burford* seeks to prevent.

As most states have adopted the Uniform Liquidation Act and its provisions regarding unified adjudication of all claims and challenges by and against an insolvent insurer, an expansive reading of this Court's holding would find that I am adopting a *per se* rule concerning abstention in cases involving an insolvent insurer, its receiver, trustee, officers, and the like. In fact, plaintiffs, in essence, posited such an argument. At oral argument, plaintiffs asserted that the standard for avoidance is a matter of law, not a policy issue. Extrapolating from their argument, plaintiffs submit that if this Court abstains under *Burford*, it would adopt a rule requiring abstention whenever a dispute arose involving an insolvent insurer regardless of whether the dispute involved a matter of policy or law.

■ The Third Circuit has unequivocally refused to "lay down a per se rule that district courts must abstain from an action against an insurance company the instant a state court places the company in liquidation proceedings". *See LAQ*, 864 F.2d at 1047; *General Glass*, 973 F.2d at 201 ("the decision of a district court to abstain remains within the district court's discretion"). That abstention is warranted in the instant matter finds further support in a unique provision of the Oklahoma version of the Liquidation Act.

■ The Oklahoma Commissioner grounded her August 1993 suit to recover the stock on 36 Oklahoma Statute section 1926, a fraudulent transfer statute. Section 1926 permits the Oklahoma Commissioner to avoid any transfer made by an insolvent insurer if the transfer occurred within one year of filing for insolvency and if the transfer is made without fair consideration or with an actual intent to hinder, delay or defraud creditors.[10]

---

10. Section 1926 provides:
 [e]very transfer made ... by an insurer within one (1) year prior to the filing of a successful

petition for ... liquidation ... is fraudulent as to then existing and future creditors if made or incurred without fair consideration or with

This section is unique to the Oklahoma Liquidation Act and is not a provision of the Uniform Liquidation Act.[11] Thus, the particular expertise of the Oklahoma state court is of essential importance in construing and applying this provision.

 Plaintiffs in the instant matter have claims regarding the Oklahoma Commissioner's compliance with the New Jersey Holding Company Act. The fact that these claims exist does not mean that a *Burford* abstention is unwarranted. The Supreme Court has suggested that *Burford* may apply "when timely and adequate state court review is available." *NOPSI*, 491 U.S. at 250, 109 S.Ct. at 2514. For example, the court in *University of Maryland* declined to abstain because there were claims asserted in the federal court that could not be asserted by the Commissioner in the state court proceedings. 923 F.2d at 271. As explained by the Third Circuit, some of the claims were the personal claims of policyholders as opposed to claims that could be asserted only by the Insurance Commissioner. *See id.* at 273.

Unlike the claims asserted in *University of Maryland*, there is nothing to prevent plaintiffs from raising these issues in Oklahoma. Plaintiffs' cause of action is not exclusively federal. Motor Club of America is named as a defendant in the Oklahoma Action. And, none of their claims are personal.

The Court finds that abstention pursuant to *Burford* is appropriate. Oklahoma state statutes indicate a desire to create a special forum to regulate and adjudicate claims against an insolvent insurer. Continuation of this action would require a federal court to determine issues that are directly relevant to state policy concerning regulation of insolvent insurers. Unusual state law is at issue. And, the suit is not based on a cause of action which is exclusively federal.

### 3. *Colorado River* Abstention

 Because this court finds abstention is appropriate under *Burford,* it is unnecessary to discuss the Oklahoma Commissioner's arguments under either *Colorado River* or *Younger* abstention doctrines. While the indicated course is to abstain pursuant to the *Burford* abstention doctrine, the Court pauses to reflect upon the policies underlying a *Colorado River* abstention.

 Under a *Colorado River* abstention, a federal court can defer to simultaneous state court proceedings addressing the same issues. The mere fact that there is concurrent state and federal court proceedings "does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1245. Thus, "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a *res judicata* or collateral estoppel effect on the other action." *University of Maryland*, 923 F.2d at 285–276 (citations omitted). Abstention in deference to simultaneous state court proceedings, however, is permissible in exceptional and narrow situations. *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247; *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

The Supreme Court has identified six factors that should be considered in determining whether such exceptional circumstances exist. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. They are: (i) the inconvenience of the federal forum; (ii) the desirability of avoiding piecemeal litigation; (iii) the order in which jurisdiction was obtained by the concurrent forums; (iv) the source of law for decision; (v) whether the state court can adequately protect the rights of the party seeking federal jurisdiction; and (vi) the

---

actual intent to hinder, delay or defraud either existing or future creditors. A transfer made ... by an [insolvent] insurer ... which is fraudulent under this section, may be avoided by the Receiver.
36 Okla.Stat. § 1926.

**11.** Most jurisdictions adopting the Uniform Liquidation Act, including New Jersey, have a voidable preference statute as opposed to Oklahoma's fraudulent transfer statute. The requirements and showings of a voidable preference statute are substantially distinct from the requirements of a fraudulent transfer statute.

court first asserting jurisdiction over property in an *in rem* action. *Id.*, 424 U.S. at 818, 96 S.Ct. at 1247; *Moses H. Cone*, 460 U.S. at 19–27, 103 S.Ct. at 938–943.

■ While a *Burford* abstention is concerned with preventing the disruption of state efforts to develop a coherent policy with regard to matters of substantial public concern, *Colorado River* abstention is concerned with "wise judicial administration," *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, and conservation of judicial resources in situations involving contemporaneous exercise of concurrent jurisdiction. *See Grimes*, 857 F.2d at 706.

For this Court to adjudicate this matter, it would have to duplicate the efforts of the Oklahoma state court. This duplicative litigation is not the result of the demands of relevant federal law. *See Moses H. Cone*, 460 U.S. at 20, 103 S.Ct. at 939 (refused to give duplicative litigation any weight since it resulted from the demands of the federal Arbitration Act). The source of law in this proceeding is state laws. No federal law is involved. Thus, the federal courts are not more appropriate arbiters for this action.

The Court recognizes that this matter is here as the result of the existence of diversity jurisdiction. Plaintiffs submit that the fact the Oklahoma Commissioner removed this action based upon diversity jurisdiction and then asked this Court to abstain illustrates that removal was nothing more than a frolic and detour through federal court, suggesting that the Court consider imposing sanctions pursuant to Federal Rule of Civil Procedure 11. Despite plaintiffs' view of the Oklahoma Commissioner's procedure, it was within her right to remove this matter. The Court has a duty to respect that right, notwithstanding its unorthodox nature.

Nevertheless, the procedural history of this case indicates it has been fraught with frolics and detours. The Oklahoma Commissioner originally began her action to recover the Motor Club stock in Oklahoma on August 9, 1993. Defendant in that action, Holding, appeared generally by executing and filing a stipulation dated September 1, 1993 regarding service, answer date and discovery response deadlines. Affidavit of Cathy Weatherford ("Weatherford Aff."), ¶ 10. Holding then filed a motion to dismiss for lack of personal jurisdiction on September 13, 1993. *Id.* at ¶ 11; Affidavit of Deanne Wilson, Esq. ("Wilson Aff."), Exhibit B. While this motion was pending, Holding filed the instant action in the Superior Court of New Jersey on September 30, 1993.

Between Holding's filing in New Jersey and the disposition of their Oklahoma motion, Holding made several other applications to the Oklahoma court. They included an application to stay discovery filed on October 8, 1993, a second motion to dismiss for lack of jurisdiction filed on October 29, 1993, and an application for an extension of time to answer. Wilson Aff., Exhibit B. When these motions were filed, the Oklahoma state court had not yet rendered a decision on the first motion.

At the same time, the New Jersey litigation was progressing. Holding filed the instant motion for summary judgment on their New Jersey complaint on or about October 21, 1993 with a return date of November 19, 1993. On October 29, 1993, the Oklahoma Commissioner removed the New Jersey action to federal court on the basis of jurisdiction.

The Oklahoma court, on November 5, 1993, disposed of the first jurisdictional motion. The court sustained defendant's objection to dismiss for lack of jurisdiction and ordered the Oklahoma Commissioner to replead within ten days. *Id.*; Weatherford Aff. at ¶ 12. The Oklahoma Commissioner did replead within the time frame.

The Court details the order of filing and the progress of the litigation to demonstrate that if this action continues it will result in piecemeal litigation. The Oklahoma state court would hear the avoidance issue pursuant to the Oklahoma Liquidation Act and this Court would hear the New Jersey Holding Company Compliance issue.[12] The crux of the conflict between the two acts is whether

---

12. The Oklahoma Commissioner has pleaded by counterclaim in this action all claims she raised

in the Oklahoma avoidance action.

and when the New Jersey Holding Company Act applies vis-a-vis the Oklahoma Liquidation Act. The resolution of the Oklahoma Liquidation Act issue will not settle the New Jersey Holding Company Act issue as even contemplated changes of control in New Jersey insurers must comply with the statute. Likewise, regardless of the outcome of the New Jersey Holding Company Act litigation in this forum, it will not resolve the Oklahoma Liquidation Act issue as to whether the stock is recoverable. It is clear that these two issues are interwoven, as opposed to being separate issues which could be adjudicated in separate but concurrent proceedings.

The Court concludes that while there is a reason to exercise federal jurisdiction—diversity of citizenship—exceptional circumstances exist which justify abstaining.

### B. Remand Versus Dismissal

■ Despite their arguments concerning summary judgment, all parties have substantially agreed that abstention may be the appropriate resolution of this matter. The sole issue remaining is whether the matter should be dismissed for resolution in Oklahoma or remanded to the New Jersey Superior Court.

■ It is well settled that a court may dismiss on abstention grounds. *See e.g.,* *Burford,* 319 U.S. at 334, 63 S.Ct. at 1107; *Moses H. Cone,* 460 U.S. at 15–16, 103 S.Ct. at 936–937. The goals in dismissing a case after a federal court abstains are "accommodating the values of economy, convenience and comity." *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31, 36 (2d Cir.1988) Plaintiffs argue that the very goals reflected in a dismissal after abstention warrant a prompt remand to the state court from which this case was originally removed. According to them, this Court should follow *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31, 36–37 (2d Cir.1988), *Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 50 (3d Cir. 1993), and the unpublished decision rendered in *Integrity Insurance Co. v. Mid–American General Agency,* 1991 WL 213899 (D.N.J.). The Court finds that plaintiffs reliance on these cases is unpersuasive.

In *Ardra,* the New York insurance commissioner, as liquidator of an insolvent New York insurer, was authorized pursuant to a liquidation order to pay claims arising under policies issued by the insolvent insurer. Because the insolvent insurer had entered into reinsurance agreements with the defendant, the New York commissioner was also authorized to collect reinsurance on such claims. 842 F.2d at 32. When the reinsurer repudiated its obligation to make such payments, the New York commissioner filed suit in state court to recover the reinsurance proceeds. *Id.* Defendant responded by removing the case to federal court.

After abstaining under *Burford,* the *Ardra* court considered whether remand or dismissal was appropriate. The court reasoned that if it had the power to dismiss the action on abstention grounds it also had the power to remand. *Id.* 842 F.2d at 36. Hence, the court remanded the once-removed case to the New York state court, the court from which the case had been removed. Remand, the court said, would assure "an adjudication of the state law issues in the pending action without risk of delay." *Id.; see also Mutual Fire,* 986 F.2d 48, 50 (affirming district court's remand of case back to state court from which it was removed, pursuant to doctrines of abstention and comity).

What distinguishes *Ardra* and *Mutual Fire* from the instant matter is that in these cases the state court was also the court in which the insolvency proceedings were pending. Here, remand to the New Jersey state court would not place this matter back in the court in which the insolvency proceedings are pending. Rather, remand to the New Jersey state courts would create an illogical result.

All of the considerations this Court made in determining whether *Burford* is applicable also counsel that remand is inappropriate. The complex administrative and judicial system for liquidating insolvent insurers that is the basis for abstaining under *Burford* is the insurance and judicial system of the state of Oklahoma, not New Jersey. Further, the expertise of the Oklahoma court, the necessity of the Oklahoma Commissioner to marshall the claims and assets in one place, and the unique nature of the fraudulent transfer

statute, make it illogical and hence inappropriate to remand the matter to New Jersey.

Plaintiffs challenge whether the avoidance action is really part and parcel of the liquidation proceedings pending in Oklahoma. The Court is aware that the Oklahoma Commissioner's action to recover the stock is separate from the liquidation action. However, at oral argument the Oklahoma Commissioner explained that this separation is actually a "red herring." The action to recover the stock is being heard by the same court, in fact, by the same judge.

Because there is no vehicle known to either the parties or this Court by which this matter can be remanded to the Oklahoma state court, the Court will simply dismiss the complaint. Plaintiffs will then be left to pursue their claims in the appropriate forum in Oklahoma.

## CONCLUSION

For all the above reasons, the Court will deny plaintiff's motion for summary judgment and final judgment on the complaint. The Court will deny defendant's cross-motion for summary judgment. The Court, however, will abstain from exercising its jurisdiction pursuant to *Burford*. The matter will be dismissed without prejudice.